In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-1869

HEARTWOOD, INCORPORATED, a non-profit corporation,
REGIONAL ASSOCIATION OF CONCERNED
ENVIRONMENTALISTS, a non-profit corporation,
JIM BENSMAN, et al.,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES FOREST SERVICE, ANN M. VENEMAN,
Secretary of the United States Department of
Agriculture, and DALE BOSWORTH, Chief of the United
States Forest Service,

*Defendants-Appellees*,

SHAWNEE TRAIL CONSERVANCY and
BLUERIBBON COALITION, INCORPORATED,

*Intervening Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 99 C 4255—**James L. Foreman,** *Judge.*

ARGUED NOVEMBER 28, 2001—DECIDED JANUARY 14, 2003

Before HARLINGTON WOOD, JR., KANNE, and ROVNER,
*Circuit Judges.*

ROVNER, *Circuit Judge.*    Plaintiffs Heartwood and
Regional Association of Concerned Environmentalists
(collectively "Heartwood") are environmental organiza-
tions dedicated to the protection of public lands. Their law-
suit in this case was prompted by regulations issued by
the United States Forest Service limiting the notice and
appeal rights for a class of actions. The history summarized
by the district court explores the genesis of this case.

Prior to 1992, the Forest Service's administrative ap-
peal regulations linked administrative review opportun-
ities to the documentation prepared pursuant to the Na-
tional Environmental Policy Act (NEPA), and allowed for
the appeal of agency decisions documented in a "decision
memo," "decision notice," or a "record of decision." The For-
est Service explained the distinction as follows. For ac-
tions which significantly affect the environment and for
which an environmental impact statement is required
under NEPA, the Forest Service documents its decision
in a "record of decision." Where an environmental assess-
ment is prepared and, based on that assessment, the For-
est Service makes a finding of no significant impact on
the environment, the determination is documented in a
"decision notice." Finally, actions falling within a class
requiring no environmental documentation under NEPA
and which are "categorically excluded" under NEPA's im-
plementing regulations are documented in a "decision
memo."

In March of 1992, the Forest Service proposed the
elimination of appeals for all those decisions except for
appeals of forest plans, characterizing the appeals as
time-consuming, procedurally onerous, confrontational
and costly. In the face of significant public opposition to
the proposal, Congress enacted the Appeals Reform Act
of 1992 ("ARA") which required the Forest Service to
establish a notice and comment process for proposed For-
est Service actions "concerning projects and activities

implementing land and resource management plans developed under the Forest and Rangeland Renewable Resources Planning Act of 1974" and required the Forest Service to modify the appeals procedure for such projects. The Forest Service proposed regulations to implement the ARA, which provided notice, comment and administrative appeals for all actions except "project or activity decisions documented in a Decision Memo listed in Forest Service Handbook 1909.15, section 31.2, Categories 1 through 3 and 5 through 9." Those categories included construction of trails, utility lines, approval of certain special use permits, tree regenerations, prescribed forest burning and cutting designed to improve timber stands, and certain "short-term" mining investigations which allow the building of up to one mile of roads. Prior to that proposed regulation, all projects documented in a decision memo were subject to appeal. The Forest Service ultimately finalized that regulation, and denied Heartwood's Petition for Rulemaking, which had sought the rescission and re-promulgation of the regulation as an improper implementation of the ARA.

After allowing some time during which the regulations were in operation in order to assess the impact, Heartwood filed suit in November 1999 before the statute of limitations expired. Heartwood contended that the Forest Service violated the ARA and the Administrative Procedure Act (APA) by promulgating regulations that improperly exempt many proposed Forest Service actions from notice, comment and administrative appeal. The complaint sought a declaration that the Forest Service violated the ARA and the APA and a remand of the regulations to the Forest Service for re-promulgation in accordance with the law, as well as the enjoining of all agency actions that should have provided the public with notice, comment and administrative appeal under the ARA.

In response to the suit, the Forest Service engaged in extensive settlement negotiations with Heartwood. On January 10, 2000, and thereafter on nine additional occasions at one-month intervals, the Forest Service moved to extend the time to file its answer to the complaint in order to complete those negotiations. The negotiations ultimately proved fruitful, and on September 6, 2000, the parties entered into a Consent Judgment, which the court entered on September 15, 2000. In that Consent Judgment, the Forest Service agreed to apply the notice, comment and appeal procedures to a list of projects and activities including some involving recreational uses. Some of the numerous projects and activities encompassed within the consent order and subject to notice, comment and appeal included the use of prescribed burning, the creation of wildlife openings, and the designation of certain travel routes for off-highway vehicles and the construction of new routes. At this point in time, the Shawnee Trail Conservancy and the BlueRibbon Coalition ("the Recreational Groups") filed a motion to intervene. The district court granted intervention and also granted the Recreational Groups' motion to vacate the consent judgment pursuant to Rule 59(e). In granting the Rule 59(e) motion, the district court held that the Recreational Groups were necessary parties to the action under Federal Rule of Civil Procedure 19.

Heartwood filed a notice of appeal from that decision and argues before this court that the district court erred in granting the motion to intervene as well as in vacating the consent judgment. In opposition, the Recreational Groups and the Forest Service question our appellate jurisdiction to hear this matter and defend the district court's decisions, although no party argues that the district court properly determined that the Recreational Groups were necessary parties.

We turn first to the jurisdictional issue. Heartwood acknowledges that the order vacating the consent judgment was not a final judgment and does not premise jurisdiction on that basis. Instead, Heartwood asserts that the decision was appealable pursuant to 28 U.S.C. § 1292(a)(1), which allows for the appeal of "[i]nterlocutory orders of the district court . . . granting, continuing, modifying, refusing or dissolving injunctions . . . ." The Supreme Court in *Carson v. American Brands, Inc.*, 450 U.S. 79 (1981), applied that provision to a district court order refusing to approve a consent decree. In that case, the district court refused to approve a consent decree between a tobacco producer and a class of present and former African-American seasonal employees and applicants for employment, in a lawsuit alleging that the tobacco producers had discriminated against the class members in hiring, promotion, transfer, and training opportunities. The consent decree would have required the tobacco producer to give hiring and seniority preferences to African-American employees and to fill one-third of all of the supervisory positions in the Richmond Leaf Department with qualified African-American employees. *Id.* at 81. The district court refused to approve that consent decree, concluding that it unlawfully granted preferential treatment on the basis of race in violation of Title VII absent a showing of present or past discrimination and that the relief must be limited to actual victims of that discrimination.

The Fourth Circuit refused to review that order on appeal, holding that it lacked subject matter jurisdiction because the order was not a final judgment and was neither a collateral order under 28 U.S.C. § 1291 nor an interlocutory order refusing an injunction under 28 U.S.C. § 1292(a)(1). The Supreme Court, however, reversed that decision, holding that the appellate court had subject matter jurisdiction over the decision refusing to

approve the consent decree because that order had the practical effect of refusing an injunction. Because § 1292(a)(1) was intended to be a limited exception to the final-judgment rule, the Court in *Carson* held that an interlocutory order that has the practical effect of refusing an injunction is appealable under that provision if the order might have "'serious, perhaps irreparable, consequences' and . . . can be 'effectually challenged' only by immediate appeal." *Id.* at 84, *quoting Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181 (1955). In *Donovan v. Robbins*, 752 F.2d 1170, 1174 (7th Cir. 1985), we summarized the holding of *Carson*:

> *Carson*, we conclude, requires that irreparable harm be shown whenever a party wants to appeal immediately either an interlocutory order deferring the entry of a permanent injunction, whether free-standing or contained in a proposed consent decree, or an interlocutory order that while not explicitly the grant or denial of a preliminary injunction may have consequences (summed up in the words "irreparable harm") similar to those of such an order

*See also* 16 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE JURISDICTION 2D § 3924.1.

The Court in *Carson* held that irreparable harm was demonstrated because the order in that case might have the consequence of "denying the parties their right to compromise their dispute on mutually agreeable terms." 450 U.S. at 87-88. The Court noted that settlements may be predicated on the implied condition that the parties would thereby avoid litigation. *Id.* The district court's rejection of the consent decree, however, hinged on the absence of evidence establishing past and present discrimination and the lack of evidence identifying the actual victims of that alleged discrimination. In refusing to enter the consent decree, the court "effectively ordered the parties to proceed to trial," with the corresponding "serious,

perhaps irreparable consequence" of denying the parties their right to settle the case. *Id.* The *Carson* Court held that there was a second serious, perhaps irreparable consequence in that the district court's rejection of the consent decree would delay the restructuring of the defendant's transfer and promotional policies. *Id.* at 88-89.

We are presented here with a similar situation in which the district court vacated a consent decree which it had previously approved. The consent decree contains injunctive relief in that it required the Forest Service to provide notice, comment and appeal procedures for a number of categories of projects and activities. *See Donovan*, 752 F.2d at 1176 (noting that a consent decree virtually by definition will contain equitable provisions). Therefore, similar to *Carson*, the order by the district court had the practical effect of refusing an injunction. Moreover, the same irreparable consequence that was identified by the Court in *Carson* is present here as well. The parties in this case attempted to exercise their right to resolve their dispute on mutually agreeable terms. In vacating the consent decree, the court unraveled a compromise that was the result of negotiations spanning nearly a year. Moreover, the court's concern in vacating the order was not a technical problem that could easily be resolved by the parties. Instead, the order was premised on the court's determination that a third party should be a part of the negotiation process. Thus, the ability of the original parties to settle the case was altered, and the presence of yet another party with adverse interests would force the parties to begin the entire settlement process anew. In *Carson*, the Court emphasized that § 1292(a)(1) should be available where an appeal would "further the statutory purpose of 'permitting litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence.'" 450 U.S. at 996. The rejection of the consent decree can only be effectually challenged at this time.

The addition of the interests of another party would make it much more difficult for this court to review this issue at a later time, when it would be presented either after a trial, a dispositive motion, or a separate settlement by a different set of parties than the set of parties to this consent decree. As with the *Carson* order, the order in this case has the serious, perhaps irreparable consequence of defeating the parties' ability to settle their claims, and therefore jurisdiction is present. Moreover, as in *Carson*, an independent irreparable consequence exists in that the consent decree would have established an appeals process to challenge a number of Forest Service actions, and absent the injunctive effect of that decree those actions are unchecked. Those actions include actions—such as prescribed burnings and the construction of new routes for off-highway vehicles—that cannot easily be undone, and the absence of an appeal option raises the potential for serious, perhaps irreparable consequences.

Therefore, we have jurisdiction to review the order vacating the consent decree. And, because that order was necessarily intertwined with the district court's conclusion that the Recreational Groups should be able to intervene, we may review the decision granting intervention as well under the doctrine of pendent jurisdiction. *See Greenwell v. Aztar Gaming Corp.*, 268 F.3d 486, 491 (7th Cir. 2001) (appropriate to exercise pendent jurisdiction where the issues are intertwined and interlocutory appeal prevents rather than produces piecemeal appeal), *cert. denied*, 122 S.Ct. 1790 (2002); *Twelve John Does et al. v. District of Columbia et al.*, 117 F.3d 571 (D.C. Cir. 1997) ("our pendent appellate jurisdiction encompasses at least determinations that are inextricably intertwined with ones over which we have direct jurisdiction"); *see also Jones v. Infocure Corp.*, 310 F.3d 529, 536-37 (7th Cir. 2002).

We consider first the order granting the Recreational Group's motion to intervene. Pursuant to Federal Rule of Civil Procedure 24, intervention may be as of right or it may be permissive. In order to intervene as of right, the Recreational Group had to satisfy four requirements: (1) the application must be timely; (2) "the applicant must claim an interest relating to the property or transaction which is the subject of the action"; (3) "the applicant must be so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; and (4) "existing parties must not be adequate representatives of the applicant's interest." *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 945-46 (7th Cir. 2000). We also noted in *Sokaogon* that "at some fundamental level the proposed intervenor must have a stake in the litigation." *Id.* at 946. A number of these factors are potentially lacking here, particularly evidence that the existing parties were not adequate representatives of the applicant's interest. *See generally Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers*, 101 F.3d 503 (7th Cir. 1996).

The parties, however, focus here on the first requirement—that the application must be timely. In assessing whether the timeliness requirement was met, the district court first stated that timeliness is not a concern when the parties have settled their dispute and intervention is for a collateral purpose. The court further declared that the motion to intervene was filed less than two weeks after the settlement agreement was entered and therefore was timely. That holding, however, is erroneous as a matter of law. First, the intervention sought by the Recreational Groups is not for a collateral purpose, but rather is to contest the consent decree on the merits, and therefore even if we recognized the collateral purpose argument (*see generally Empire Blue Cross and Blue Shield v. Janet Greeson's A Place For Us, Inc.*, 62 F.3d

1217, 1221 (9th Cir. 1995), and cases cited therein), it would be inapplicable here. The parties do not contend otherwise.

Therefore, the Recreational Groups must establish that their motion is timely. In its brief discussion of timeliness, the district court noted that the lawsuit was filed on November 3, 1999, was settled on September 15, 2000, after repeated extensions of the time to file an answer for the purpose of settlement negotiations, and the motion to intervene was filed on September 27, 2000. The court then stated that "[t]he motion to intervene was filed less than two weeks after the Settlement Agreement was entered. Accordingly, the motion to intervene is timely." Dist. Ct. Order at 5.

The relevant inquiry in determining timeliness, however, is not on the time between the settlement and the motion to intervene, but instead is on the time between the Recreational Groups' knowledge that the suit could impact their interests and the motion to intervene. Prompt filing of a motion to intervene after the settlement does not indicate timeliness, particularly where there is evidence that the intervenor should have known the suit could impact its interests for some time prior to that settlement. In fact, as we noted in *Sokaogon*, "that the prospective intervenor waited until settlement was imminent strongly suggests that [the prospective intervenor] was not interested in intervening in the *litigation* but in blocking a settlement between the parties—or at a minimum, this settlement." 214 F.3d at 948 (emphasis in original).

A prospective intervenor must move promptly to intervene as soon as it knows or has reason to know that its interests might be adversely affected by the outcome of the litigation. *Id.* at 949; *United States v. South Bend Community Sch. Corp.*, 710 F.2d 394, 396 (7th Cir. 1983). In determining whether a motion to intervene is timely, we consider four factors: "(1) the length of time the inter-

venor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; [and] (4) any other unusual circumstances." 214 F.3d at 949. The district court failed to apply that inquiry to the circumstances presented here. Instead of determining whether the filing of the complaint put the Recreational Groups on notice that their interests might be affected, and weighing the prejudice to all parties, the district court merely examined the time period in which the Recreational Groups knew that their interests were affected. Even then, the court engaged in no examination of the relative prejudice. Accordingly, the case must be remanded to determine when the Recreational Groups first knew or should have known that the suit could affect their interests and to weigh the prejudice caused by the delay against that which would result if intervention were denied. Moreover, if that hurdle is met by the motion to intervene, the court must then analyze the remaining factors of intervention as of right. Conclusory sentences such as "this interest is not adequately represented by either plaintiffs or defendants," Dist. Ct. Order at 5, are insufficient for us to identify the reasoning behind the holdings in order to review them.

The district court alternatively held that permissive intervention was proper, but that determination is also problematic. First, permissive intervention similarly is proper only where the application was timely, and therefore the same problem is presented as with the intervention as of right. Moreover, in exercising its discretion to grant or deny permissive intervention, the court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." R. 24(b). Again, the district court engaged in no such inquiry. The court merely acknowledged that the grant of permissive intervention is discretionary, and then stated:

> Permissive intervention is appropriate because the interests raised by the intervenor-applicants involves questions of law or fact common to the issues to be resolved in this case. Accordingly, the intervenor-applicants are also entitled to permissive intervention.

Dist. Ct. Order at 6. Because the court failed to consider whether intervention would cause undue delay or prejudice, the grant of permissive intervention was improper.

Accordingly, the intervention decision must be vacated and remanded to the district court, and the order vacating the consent decree must be remanded as well because it hinges on whether the Recreational Groups are properly a party to the action. No party defends on appeal the court's holding that the consent decree had to be vacated because the Recreational Groups were a necessary party. We decline to consider the numerous alternate theories raised by the parties to support vacating the consent decree, because the issue is speculative at this point pending reconsideration of the intervention decision and because those arguments should be considered by the district court in the first instance.

The orders of the district court granting intervention and vacating the consent judgment are vacated, and the case is remanded for further proceedings consistent with this opinion.

A true Copy:

> Teste:

> _____
> *Clerk of the United States Court of*
> *Appeals for the Seventh Circuit*

USCA-02-C-0072—1-14-03