# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2359

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ROD BLAGOJEVICH and ROBERT BLAGOJEVICH,

*Defendants*.

APPEAL OF:

CHICAGO TRIBUNE COMPANY, THE NEW YORK TIMES COMPANY, ILLINOIS PRESS ASSOCIATION, and ILLINOIS BROADCASTERS ASSOCIATION

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 CR 888—**James B. Zagel**, *Judge*.

ARGUED JUNE 29, 2010—DECIDED JULY 2, 2010—
AMENDED JULY 12, 2010

Before EASTERBROOK, *Chief Judge*, and WOOD and TINDER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Anticipating that the substantial attention being devoted to the criminal charges

against a former Governor of Illinois would lead the press and public to bombard jurors with email and instant messages that could undermine their impartiality (and perhaps their equanimity), the district judge decided that the names of jurors selected for the trial would not be released until the trial has ended. The *Chicago Tribune*, *The New York Times*, and two media groups sought to intervene to contend that the names should be released as soon as the jurors are seated. The judge told the putative intervenors that he had already promised the jurors that their names would be disclosed only at the trial's end, and that their motion to intervene therefore was untimely. The judge also concluded that the first amendment does not entitle the press to obtain these names, which have never been uttered in court— though the parties and their lawyers know the jurors' names (the judge did not order anonymity).

The Federal Rules of Criminal Procedure lack a counterpart to Fed. R. Civ. P. 24, which allows intervention. But courts have permitted intervention when the potential intervenor has a legitimate interest in the outcome and cannot protect that interest without becoming a party. See *In re Associated Press*, 162 F.3d 503, 507–08 (7th Cir. 1998) (allowing intervention in a criminal prosecution and collecting other cases on the subject). See also Fed. R. Crim. P. 57(b) ("A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."). Cf. *United States v. Rollins*, No. 09-2293 (7th Cir. June 9, 2010) (discussing opinions that allow motions for reconsideration in criminal cases, despite the absence of any provision in the Rules of Criminal Procedure).

The four would-be intervenors have appealed. The trial is ongoing. Because the parties estimate that it will last for several additional weeks, the controversy is live. And the appeal is supported by the collateral-order doctrine, because an appeal from the final decision would be too late. By then the names will have been disclosed to the public. The only way to vindicate a claimed entitlement to obtain the names before the trial's end is an appeal before the trial's end. See *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 895–96 (7th Cir. 1994).

Although the district judge gave two reasons for denying the motion to intervene—that the motion was untimely and that deferred disclosure is compatible with the first amendment—appellants' opening brief argues only the latter subject. Footnote 3 mentions the timeliness issue and states that appellants disagree with the district judge but does not adduce any argument. Nor would argument have been permissible in that footnote, which appears in the brief's "Statement of the Case". Argument is not allowed in a brief's recap of a case's procedure or facts. See *520 South Michigan Avenue Associates, Ltd. v. Shannon*, 549 F.3d 1119, 1124 n.4 (7th Cir. 2008); Circuit Rule 28(c). But after the appellants forfeited any opportunity to contest one of the two grounds on which they had lost in the district court—and thus doomed their appeal, because if you lose for two independent reasons an appellate victory on one does not affect the judgment—the United States forfeited the benefit of appellants' forfeiture. Instead the prosecutor's brief met the non-argument on the merits, and at oral argument counsel for the United States represented that

the prosecutor is not invoking any doctrine of forfeiture to block appellate review. The possibility of forfeiture thus has been waived, and as the subject is not jurisdictional the prosecutor's waiver is conclusive.

Thus freed to consider the validity of the district court's decision, we conclude that it was an abuse of discretion to deem untimely the motion to intervene. True, by the day of the hearing on the motion to intervene, the judge had told the jurors that their names would be revealed only after the trial ended. But the motion for leave to intervene had been filed the day before the judge gave this assurance to the jurors, and a judge cannot render a motion untimely by an act taken afterward. That would make the judge's declaration a self-fulfilling prophesy. It would be regrettable to disappoint jurors' legitimate expectations, but it would be even more regrettable to permit a district judge to frustrate any challenge to his decision by giving an assurance that he ought to have understood was premature in light of a pending motion.

The judge thought that the press should have intervened earlier, because in mid-2009 he mused in open court about the possibility of deferring release of the jurors' names. That musing was reported in the *Chicago Sun-Times* and other papers; the press therefore cannot claim ignorance. Two years earlier a district judge had deferred the release of jurors' names in another high-profile criminal prosecution in the Northern District of Illinois. *United States v. Black*, 483 F. Supp. 2d 618 (N.D. Ill. 2007). The *Tribune* had to appreciate that this was a possi-

bility for the prosecution of a former governor. But people need not intervene in response to musings. Had the *Tribune* moved to intervene in mid-2009, the district court likely would have rejected the motion as premature and told the newspaper to bide its time. Intervention not only complicates the process of adjudication (extra parties file extra briefs and may obstruct settlements by the original parties) but also is expensive for everyone involved. That expense should not be incurred unless necessary.

Once the judge not only flags an issue as important but also sets a schedule for its resolution, the time has come to intervene. People potentially affected by the decision can't sit on the sidelines, as if intervention were a petition for rehearing. If they receive notice that the court will hold a hearing to address a particular question, they must participate rather than wait and see what the court does. See *Heartwood, Inc. v. United States Forest Service*, 316 F.3d 694 (7th Cir. 2003). (Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7C *Federal Practice and Procedure* §1916 (3d ed. 2007), discusses this principle and some exceptions, which we need not consider.) But the district judge in this case did not set a schedule for deciding when jurors' names would be released and did not hold a hearing on that subject. Instead he appears to have entertained submissions in chambers from counsel and then reached a decision, which was not announced to the public until the very day the judge denied the motion to intervene. (A passing statement in open court two weeks earlier is to the same effect, though no formal decision was entered on the docket.)

There was never a public announcement identifying an issue and specifying a schedule for its resolution. The motion to intervene therefore was timely.

The informality of the procedure that led to the contested decision also complicates evaluation of the merits. Appellants contend that the press has an unqualified right of access to jurors' names while the trial proceeds, even though those names have never been uttered either in open court or in a closed session. They rely principally on *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) (*Press-Enterprise I*), which concluded that the first amendment makes voir dire presumptively open to the public, and the divided decision in *United States v. Wecht*, 537 F.3d 222 (3d Cir. 2008), which extended this approach to jurors' names even when not mentioned during the voir dire. Cf. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) (*Press-Enterprise II*) (preliminary hearings are presumptively open). But no one contends (or should contend) that jurors' names *always* must be released. Anonymous juries are permissible when the jurors' safety would be jeopardized by public knowledge, or the defendant has attempted to bribe or intimidate witnesses or jurors. See, e.g., *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1031–38 (11th Cir. 2005); *United States v. Edmond*, 52 F.3d 1080, 1089–94 (D.C. Cir. 1995); *United States v. Barnes*, 604 F.2d 121, 140–43 (2d Cir. 1979). The right question is not *whether* names may be kept secret, or disclosure deferred, but *what justifies* such a decision.

Appellants seek access to the jurors' names not only to publish human-interest stories (though we don't deni-

grate that objective) but also because they want to learn whether the seated jurors are suitable decision-makers. Investigations of the jurors in the trial of Governor Blagojevich's predecessor (both in that office and at the defendants' table) revealed that several had lied on their questionnaires and had disqualifying convictions or otherwise might have been subject to challenge for cause. The district court replaced two of the jurors after deliberations had begun. See *United States v. Warner*, 498 F.3d 666, 684–90 (7th Cir. 2007). No one fancies a repeat performance. The district court believes that it has improved the vetting process; the press wants to check, and to do so before it is too late to seat alternate jurors (if necessary) so that the trial can reach a successful conclusion. The district judge fears, however, that public knowledge of the jurors' identities will lead to events that undermine the impartiality of the persons now serving and would discourage others from agreeing to serve in future trials. Legitimate interests are on both sides.

Relying on the first amendment as the means of obtaining the information complicates matters, however, because there is no general constitutional "right of access" to information that a governmental official knows but has not released to the public. See *Los Angeles Police Department v. United Reporting Publishing Corp.*, 528 U.S. 32, 40 (1999) (no right under the first amendment to addresses of persons who have been arrested by the police); *Houchins v. KQED, Inc.*, 438 U.S. 1 (1978) (no right under the first amendment to enter a county jail, interview inmates, and take pictures). In *Gannett Co. v. DePasquale*,

443 U.S. 368, 391–93 (1979), the Court declined to decide whether the constitutional approach governing information known to officials of the executive branch should be used for information known to the judiciary, or whether there should be a specific right of access under the first amendment for some information known to judges in criminal prosecutions. Instead *Gannett* held that, if there is a right of access, disclosure at the end of the trial gives the press everything to which it is constitutionally entitled. Appellants' brief (and reply brief) in this court do not mention *Gannett*. Neither did the majority in *Wecht*.

We do not say that *Gannett* necessarily resolves the question whether deferred release of jurors' names is permissible. *Gannett* dealt with a claim of access to a hearing on a defendant's pretrial motion to suppress evidence. Perhaps voir dire (and jurors' names) should be treated differently after *Press-Enterprise I*. Perhaps other decisions, such as *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), affect the answer—though it bears repeating that most post-*Gannett* decisions deal with information that made its way into the record of the litigation, rather than information that has yet to be presented in court. Cf. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) (a protective order forbidding the release of information learned in discovery, and not yet admitted at trial, is compatible with the first amendment). How *Press-Enterprise I* and *Seattle Times* affect *Gannett*'s conclusion about deferred access to information known to the judge and litigants, but not uttered in a courtroom, is a question that has not been analyzed—not

by the Supreme Court, not by the majority in *Wecht*, and not by the litigants in this appeal. And the Supreme Court often reminds other judges that they must follow all of its decisions, even those that seem incompatible with more recent ones, until the Justices themselves deliver the coup de grâce. *Eberhart v. United States*, 546 U.S. 12 (2005); *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997).

There is another potential complication in analyzing this matter through the lens of the first amendment. The jurors' names went unmentioned during voir dire not because of the judge's decision but because of §10(a) of the district court's plan for implementing the Jury Selection and Service Act. (We quote from this below.) In the Northern District of Illinois, the names of persons considered for jury service and not seated are never revealed in public; all references during voir dire therefore are to numbers. The jurors chosen for service at the end of voir dire also were called by number. Why numbers then, rather than names? One possibility is that the parties treated the judge's decision (which they may have learned in chambers) as an informal gag order, preventing them from speaking the names in court or to reporters out of court. But another possibility is that the litigants themselves think that the jurors' names should be withheld until the trial is over. That is the prosecutor's view; whether it is defendants' view we do not know. (Defendants elected not to participate in this appeal.) This makes it hard to choose whether we should treat the judge's decision as a partial closure of voir dire covered by *Press-Enterprise I* or as a right-of-access situation more like *KQED* and potentially *Gannett*.

Instead of starting with the first amendment, we think it best to start with statutes and the common law—for there is a common-law right of access by the public to information that affects the resolution of federal suits. See *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597–99 (1978); *In re Reporters Committee for Freedom of the Press*, 773 F.2d 1325, 1331–33 (D.C. Cir. 1985) (Scalia, J.); *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 567–68 (7th Cir. 2000); *Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544 (7th Cir. 2002). A court should never begin with the Constitution. See, e.g., *New York Transit Authority v. Beazer*, 440 U.S. 568, 582–83 (1979); *Rehman v. Gonzales*, 441 F.3d 506, 508–09 (7th Cir. 2006). Sometimes constitutional adjudication is essential, as when a case comes to the Supreme Court from a state court and only federal issues are open to consideration. That was the situation in *Press-Enterprise I* and *II*. But federal courts may regulate their own procedures and should do so sensibly. Only if a litigant believes that the federal judiciary's understanding of the best way to decide about the time at which to release jurors' names violates the Constitution would it be appropriate to broach that topic. Neither the Supreme Court nor this circuit has decided under what circumstances, and after what procedures, jurors' names may be kept confidential until the trial's end.

But these are not subjects on which we need to make much headway, given the presumption in favor of disclosure—a presumption that so far has not been overcome, because the district court did not afford an opportunity to present evidence and did not make any

findings of fact. That presumption comes not only from the common-law tradition of open litigation but also from the Jury Selection and Service Act, 28 U.S.C. §§ 1861–78. Section 1863 says that each district court must adopt a plan for jury selection, and §1863(b)(7) provides that each plan must "fix the time when the names drawn from the qualified jury wheel shall be disclosed to parties *and to the public*." (Emphasis added.) The answers "never" or "after trial" are possible under this language but constitute an exception to the norm of disclosure, an exception that needs justification.

Section 1863(b)(7) adds: "If the plan permits these names to be made public, it may nevertheless permit the chief judge of the district court, or such other district court judge as the plan may provide, to keep these names confidential in any case where the interests of justice so require." The plan adopted by the Northern District of Illinois contemplates that the names of venire members who are questioned but excused will not be revealed to the public, but that the names of the seated jurors and alternates will be, as soon as they are sworn to service. Section 10(a) reads: "No person shall make public or disclose to any person, unless so ordered by a judge of this Court, the names drawn from the Qualified Jury Wheel to serve in this Court until the first day of the jurors' term of service. Any judge of this Court may order that the names of jurors involved in a trial presided over by that judge remain confidential if the interests of justice so require." There's the "interests of justice" exception, which implies a need for some procedure to make the necessary finding. The Supreme Court

made this point in *Waller v. Georgia*, 467 U.S. 39, 48 (1984), when rejecting an argument that a pretrial hearing could be closed just as a matter of discretion:

> [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

That's also true of orders providing for the anonymity of jurors. Although deferred release of jurors' names requires less justification than does anonymity, an appropriate inquiry into the facts remains necessary.

At the hearing on the motion to intervene—the only occasion on which the district judge formally announced and explained his decision—the judge expressed concern that jurors would be peppered with email and instant-message queries in this high-visibility case. These incoming messages may be viewed as harassment (the anticipation of which would make it more difficult to find people willing to serve as jurors) and certainly would tempt the jurors to engage in forbidden research and discussion. Independent research is not allowed, and discussion must wait until deliberations begin. These are serious concerns. If the problem that the judge anticipates has come to pass in other high-visibility cases, then something must be done. Some alternatives to (temporary) anonymity—sequestering the jurors or requiring them to surrender their smart phones and computers—could

be worse for the jurors and the litigants, even though they might be preferable to the press.

But because the judge acted without evidence, and the arguments at the brief hearing on the motion to intervene post-dated the judge's decision (which had been conveyed to jurors the previous day), we do not know the answers to some potentially important questions. *Have* jurors in other publicized cases been pestered electronically (email, instant messaging, or phone calls), or by reporters camped out on their doorsteps? If judges in other high-visibility cases have told the jurors to ignore any unsolicited email or text messages, have those instructions been obeyed? If not, do any practical alternatives to sequestration remain? The Department of Justice, and the lawyers who represent the press, may be able to present evidence and arguments that would be helpful in addressing those issues. Findings of fact made after an appropriate hearing must be respected on appeal unless clearly erroneous. But no evidence was taken, no argument entertained, no alternatives considered, and no findings made before this decision was announced to the jurors.

What evidence the judge must consider depends on what the parties submit. We do not imply that any of the subjects mentioned above is indispensable to a decision. In *Black* the parties chose not to present any evidence, and the court then decided in light of the parties' arguments and the judge's experience with jurors' concerns and behavior. The district judge in this case has referred elliptically to efforts to contact him by email and in other

ways; perhaps putting details on the record would help to make concrete some potential effects of disclosing jurors' names while the trial is under way. What is essential—what occurred in *Black* but not so far in this case—is an opportunity for the parties (including the intervenors) to make their views known in detail, followed by a considered decision that includes an explanation why alternatives to delayed release of the jurors' names would be unsatisfactory.

Instead of constructing a framework for hearings, findings, and rules of decision, we think it best to wait until a hearing has been held. We do not decide today when it is appropriate to delay the release of jurors' names. That subject will not be ripe until the district judge has provided a better basis for understanding not only the risks of releasing the names before the trial's end, but also other options (and the risk that alternatives such as cautionary instructions will fail).

When considering this subject, the district judge should take account of the Supreme Court's observation in *Presley v. Georgia*, 130 S. Ct. 721, 724 (2010), that, before closing any part of the criminal process to the public (the part at issue in *Presley* was voir dire), a judge not only must make the findings required by *Waller* but also must consider alternatives to secrecy, whether or not the lawyers propose some. The judge in *Presley* had expressed concern that, if members of the public were in the courtroom, they might conduct clandestine conversations with members of the venire or make remarks that would cause prejudice even if the venireperson did not reply. To this the Justices replied:

> The generic risk of jurors overhearing prejudicial remarks, unsubstantiated by any specific threat or incident, is inherent whenever members of the public are present during the selection of jurors. If broad concerns of this sort were sufficient to override a defendant's constitutional right to a public trial, a court could exclude the public from jury selection almost as a matter of course.

130 S. Ct. at 725. Likewise a judge must find some *unusual* risk to justify keeping jurors' names confidential; it is not enough to point to possibilities that are present in every criminal prosecution. The great public interest in this prosecution may indeed create exceptional risks, and the trial's length may make sequestration exceptionally unattractive as an alternative, but these are questions that should be explored on the record.

To accommodate the jurors, the district judge is taking evidence only four days a week. It therefore should be possible to hold a prompt hearing without interrupting the trial. Nothing in this opinion should be read to presage the appropriate outcome of that hearing, or of any later appeal should one be filed.

The district judge's deferred-disclosure order is vacated, and the case is remanded with instructions to grant the motion to intervene and hold proceedings consistent with this opinion. The jurors' names will remain confidential, however, until a hearing has been held and a new decision rendered.