In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1741

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SUSAN L. HARRIS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 12-CR-30226-2 — **G. Patrick Murphy** and **David R. Herndon**, *Judges.*

ARGUED MAY 28, 2014 — DECIDED AUGUST 18, 2014

Before RIPPLE, WILLIAMS, and HAMILTON, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* What makes a jury anonymous? That is the question posed by Susan Harris, who argues that she was improperly tried by an anonymous jury and that such a trial violated her due process rights. However, because Harris has not met her burden and shown one necessary component of an anonymous jury—that the parties were kept from knowing the potential jurors' names—we reject her argument and affirm her conviction.

## I. BACKGROUND

Because the facts of the crime do not affect our decision, we only briefly outline them. Susan Harris worked at a hospital in Southwest Illinois alongside her friend Ashley Drummond. Harris stopped working at the hospital before the relevant time period, but Drummond continued to do so and eventually began working a second job with Harris, namely stealing people's identities. Drummond, originally charged as a co-defendant in this case before pleading guilty, testified at trial that she and Harris came up with the idea to get money by applying for credit cards using the birthdates and social security numbers Drummond stole from patients' files. Harris figured out the process would be a lot easier if they targeted patients who came from nursing homes because copies of their social security cards and relevant information were on the back of their charts.

After Drummond stole the information, both Harris and Drummond filled out credit card applications using the stolen information and certain of their own information. For example, Harris filled out one credit card application with a victim's name and social security number, but put down Harris's address—where the card was ultimately delivered—and Harris's email, and activated the card using Harris's phone number. Harris and Drummond executed this scheme and stole ten different patients' identities before being caught when Drummond was captured on video using one of the fraudulently obtained credit cards. Drummond flipped on Harris and Harris was charged with, and ultimately convicted of, conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349 and aggravated identity theft in violation of 18 U.S.C. § 1028A.

During *voir dire*—when the parties and court determine the makeup of the jury by asking potential jurors questions—the district court judge introduced himself and explained the jury selection process to the potential juror pool. After the courtroom deputy swore the jury in, the district court judge stated:

> One more thing I almost forgot. This is hard for me. To protect people's privacy, we try to refer to jurors by numbers now. Now, there is nothing more difficult than an Irishman that grew up in coal mining country to refer to people by numbers, and I'm going to try. So I'll talk to Juror Number 1, Juror Number 2, and the like. And I'm going to try not to forget and talk to you like you were otherwise a human being. But we do this just to protect your privacy, which is a very important consideration in the modern world.

There was no objection to this statement and Harris was convicted on both counts. After the case was transferred to her appellate counsel and this appeal ensued, Harris argued the judge's statement demonstrated that the court improperly empaneled an anonymous jury.

Before filing its response brief to this court, the government filed a Motion to Supplement the record with the newly assigned district court judge (the case had been transferred after the trial judge retired), seeking leave to include affidavits from the Jury Administrator, the Deputy Clerk, and the Assistant United States Attorney who served as a prosecutor during the trial, all effectively stating that the jury was not anonymous and the jurors knew the parties had

their identifying information. The government also included a blank juror questionnaire form used during the *voir dire* at Harris's trial that included spaces for the prospective jurors' names, addresses, and other identifying information. The district court granted the motion and we gave leave for Harris to argue that motion was improperly granted, which she did in a refiled opening brief. The government included the supplemental materials in its response and argued that the jury was not "anonymous."

## II. ANALYSIS

Harris argues that the district court committed plain error by empaneling an anonymous jury when none of the factors we have previously set forth as "bearing on the propriety of an anonymous jury" were present. *See United States v. Mansoori*, 304 F.3d 635, 650–51 (7th Cir. 2002). Those factors include: (1) the defendant's involvement in organized crime; (2) her involvement in a group with the capacity to harm jurors; (3) whether she previously has attempted to interfere with the judicial process; (4) the severity of the punishment she would face if convicted; and (5) whether publicity regarding the case presents the prospect that the jurors' names could become public and expose them to intimidation or harassment. *Id.* Harris contends these factors were not present in her case and empaneling an anonymous jury deprived her of a fair trial because the jurors would have been predisposed to believe she was dangerous and/or guilty if there was a need for them to be anonymous. She also argues the jurors' anonymity deprived her attorney of the ability to effectively use his peremptory challenges since he was working with incomplete information about the jurors. Finally, she argues the district court erred in granting the Motion to

Supplement the record because the supplemental materials were not originally before the district court. Without relying on the supplemental materials, we find the jury was not anonymous and reject her first two arguments while not reaching the third.

Since Harris's counsel did not object to the empaneling of an anonymous jury, we will review for plain error. *See United States v. Christian*, 673 F.3d 702, 708 (7th Cir. 2012). Under that standard, Harris has the burden of showing: "(1) an error, (2) that was plain, meaning clear or obvious, (3) that affected the defendant's substantial rights in that [s]he probably would not have been convicted absent the error, and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.*; *see also United States v. Ramirez*, 606 F.3d 396, 398 (7th Cir. 2010) (reiterating that appellant has burden of proving plain error). An error is "plain" when it is "so obvious 'that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.'" *Christian*, 673 F.3d at 708 (quoting *United States v. Turner*, 651 F.3d 743, 748 (7th Cir. 2011)).

For Harris's argument that the district court committed plain error by empaneling an anonymous jury to succeed, she must first demonstrate that the district court actually did empanel an anonymous jury. "An 'anonymous jury' is selected from a venire whose members' identifying information—such as names, occupations, addresses, exact places of employment, and other such facts—has been withheld from the parties in order to protect potential jurors and their families." *United States v. Morales*, 655 F.3d 608, 620 (7th Cir. 2011); *see also United States v. Crockett*, 979 F.2d 1024, 1215 n.10 (7th

Cir. 1992) (noting an anonymous jury occurs when the court "decide[s] to withhold from the parties some of the identifying information about each juror").

We have not had an opportunity to identify what information must be withheld, and from whom, to make a jury anonymous and thereby trigger the anonymous jury analysis from *Mansoori*. 304 F.3d at 650–51. Yet, the rationale behind the empaneling of anonymous juries and our past practice guide our analysis. "Empaneling an anonymous jury is an extreme measure that is warranted only when there is strong reason to believe the jury needs protection. An anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected, thereby implicating the defendant's constitutional right to a presumption of innocence. Jury anonymity also deprives *the defendant* of information that might help him to make appropriate challenges—in particular, peremptory challenges—during jury selection." *Mansoori*, 304 F.3d at 650 (quotations omitted, emphasis added). In other words, anonymous juries should be empaneled only when the jurors might need protection from the defendant and should only be used in rare instances because they withhold relevant information from the defendant. That rationale necessarily requires that the identifying information be withheld from the defendant. Keeping the jurors' information from the public, but nevertheless making it available to the parties, would defeat the very reasoning behind permitting anonymous juries, namely keeping that information from a dangerous defendant. *Cf. United States v. Wecht*, 537 F.3d 222, 243 n.39 (3d Cir. 2008) (Van Antwerpen, J., concurring in part, dissenting in part) ("I also note that the jury in this case is not 'anonymous,' as the parties will know everything about the jurors, including their

names and other personal information, and the public will know everything about the jurors except their names"). *But see United States v. Dinkins*, 691 F.3d 358, 371 (4th Cir. 2012) (finding that giving names to parties but withholding names from the public constitutes "lesser degree of anonymity" that still requires "anonymous" jury analysis). This rationale behind why courts make juries anonymous requires withholding, at least, the jurors' names from the parties.

The conclusion that an anonymous jury requires withholding information from the parties is supported by our past practice. In every instance in which we have affirmed the use of an anonymous jury, the jurors' names and addresses were withheld from both the parties and the public. *See United States v. White*, No. 08-cr-00851-1 (N.D. Ill. Dec. 16, 2010), Dkt. 133 (withholding from the parties and public the names and home and work addresses of prospective and empaneled jurors, as well as those of their spouses), *aff'd*, *United States v. White*, 698 F.3d 1005 (7th Cir. 2012); *United States v. Delatorre, et al.*, No. 03-cr-00090 (N.D. Ill. Jan. 15, 2008), Dkt. 652 (withholding names, addresses and other identifying information of the members of the venire from parties and public), *aff'd*, *Morales*, 655 F.3d 608 (7th Cir. 2011); *United States v. Benabe*, No. 03-cr-00090 (N.D. Ill. Jan. 15, 2008), Dkt. 652 (withholding names, home address, and places of employment from parties and public), *aff'd*, *United States v. Benabe*, 654 F.3d 753 (7th Cir. 2011); *Mansoori*, 304 F.3d at 649 (7th Cir. 2002) (affirming withholding of the names and home and work addresses of prospective and empaneled jurors from "parties, the public, [and] the media"); *United States v. DiDomenico*, 78 F.3d 294, 301 (7th Cir. 1996) (noting anonymous jury is one where the court refuses to "reveal the names and addresses of the jurors to the par-

ties"); *Crockett*, 979 F.2d at 1216 (withholding jurors' names, street addresses, and places of employment from the parties and public). Two repeating factors are that the jurors' names and addresses are withheld from the parties. Without making any determination on the minimum sufficient amount of information that must be withheld from the parties for the jury to be anonymous, we find that one necessary component that must be withheld from the parties is the jurors' names.

It is important to note that what this circuit refers to as an "anonymous" jury is different than what we have previously called a "confidential" jury, and they require different analyses. The former requires the *Mansoori* analysis to safeguard due process, 304 F.3d at 650–51, and the latter focuses on whether access to the courts has been properly denied. *See United States v. Blagojevich*, 612 F.3d 558, 563–65 (7th Cir. 2010). In *Blagojevich*, we considered the media's right to access the names of potential jurors, which were being withheld from the public but not the parties. 612 F.3d at 559 (noting "the parties and their lawyers know the jurors' names"). We did not review the jury in *Blagojevich* under our anonymous jury test, but instead called it a "confidential" jury. *Id.* at 563, 564, 565. We contrasted the different rationales underlying "confidential" juries and "anonymous" juries— anonymous juries are for the jurors' protection while the "confidential" jury in that case was intended to limit the jurors' exposure to the media—and noted the *Blagojevich* jury was different because "the judge did not order 'anonymity.'" *Id.* at 559, 561; *see also United States v. Blagojevich*, 614 F.3d 287, 287 (7th Cir. 2010) (Posner, J., dissenting in denial of rehearing en banc) (noting "[t]he jury is not 'anonymous.' The

jurors' names are known to the parties and will be available to the public at the end of the trial.").

To be sure, both "confidential" and "anonymous" juries infringe on the public nature of trials and should therefore only be used sparingly and after sound consideration that is articulated by the district court on the record. *See, e.g., Morales*, 655 F.3d at 621 (noting that "the use of anonymous juries is discouraged" and the district court should put "its reasons for granting the government's motion [to empanel an anonymous jury] on the record"); *see also Blagojevich*, 612 F.3d at 563–65 (recognizing access to courts problems with "confidential" jury). However, Harris does not allege that the district court empaneled a "confidential" jury, nor does she make an "access to the courts" argument. *See, e.g., Blagojevich*, 612 F.3d at 565. Instead, she argues that her jury was anonymous and that the district court should have conducted the test we have reserved for anonymous juries. Therefore she has the burden of showing that the court withheld from the parties the names of the potential jurors; a showing that the public did not know the names is not enough to meet her burden because that fact alone does not make the jury anonymous.

The only evidence Harris points to in arguing that the jury was anonymous are the judge's statements before conducting *voir dire*. Our analysis, and Harris's appellate argument, is hindered by the fact that Harris's trial counsel did not object and create a fuller record of what information, if any, was withheld from the parties and/or the public. But, because Harris's counsel relies only on the portion of the judge's *voir dire* statements quoted in full above, we will review that same portion to determine whether or not she can

show the jury was anonymous. There are three reasons we find Harris has not met her burden. First, we do not believe the judge's statements, when examined alone, demonstrate that the jurors' names were unknown to the parties. The judge did not tell the jurors that their names were being kept from the parties, but instead said their names were not being stated in open court because "to protect people's privacy, we try to refer to jurors by numbers now" and "we do this just to protect your privacy, which is a very important consideration in the modern world." While Harris's argument that these statements demonstrated that the jury was anonymous is one possible conclusion to draw, we believe it just as, if not more, likely that a rational juror would understand these comments to mean that the jurors' names were being kept from the public. There is nothing in the judge's statement that indicates the jurors' information was being kept from the parties. So we decline to draw the inferences Harris asks us to based on these two statements by the judge. To do so would be to defeat the purpose of Harris's burden under the plain error standard, which requires her to show an error "so obvious that the trial judge and prosecutor were derelict in countenancing it." *Christian*, 673 F.3d at 708 (internal quotation omitted). Such an error is not present from these statements alone.

Second, the judge explicitly named one of the jurors on the record, albeit at sidebar. It came out through questioning that one of the potential jurors was a case administrator in the United States District Court for the Southern District of Illinois courthouse and knew the defense lawyers in this case. Though clearly at least one party knew the juror's name already, the judge then made sure both did—or reiterated what information was already in front of the parties—by

stating "I'm very worried about Ms. [name], our Juror Number 5." We recognize this is an out of the ordinary circumstance since one party does not usually know a juror outside of *voir dire*. But had this truly been an anonymous jury, even if the potential juror knew defense counsel, we believe the judge would not have stated the juror's name on the record—and done so without any objection or comment—since that would defeat the purpose of an anonymous jury.

Finally, our conclusion that this was not an anonymous jury is reinforced by the nature of the judge's questions and the jurors' responses. The questioning the judge conducted during *voir dire* and the responses he received presents a picture of a jury that felt free and comfortable to reveal private information about themselves and a judge who encouraged such disclosure. For example, Juror No. 1 revealed that he was a chaplain, then specifically named the institution where he worked, where it was located, and how long he had worked there. A quick and simple Internet search, based on that information alone, reveals what we believe is Juror No. 1's name, as well as his work address and telephone number, since only one individual fits the description given in open court. If, in fact, this was an anonymous jury as Harris argues, it was so ineffective as to be useless in protecting the "jurors' interest in their own security." *Mansoori*, 304 F.3d at 650. Had this truly been an anonymous jury in which the judge was trying to keep the jurors' identifying information from the parties, we do not believe the judge would have asked such broad and open-ended questions or allowed the jurors to give the responses they did.

Ultimately, the burden is on Harris to convince us the judge committed a plain and clear error in this case. *Chris-*

*tian*, 673 F.3d at 708. Because she has not met that burden, and the evidence points against a finding that this jury was anonymous, we affirm. As our earlier discussion has made clear, we have come to this conclusion without relying on any of the supplemental evidence submitted by the government. Therefore we do not make any determination as to whether those documents were or were not properly submitted as supplements to the record.

## III. CONCLUSION

We AFFIRM the decision of the district court.