NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

PAULO LUPE RODRIGUEZ, *Appellant.*

No. 1 CA-CR 15-0659
FILED 2-2-2017

Appeal from the Superior Court in Maricopa County
No. CR2014-106322-001
The Honorable Alfred M. Fenzel, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Law Offices of Neal W. Bassett, Phoenix
By Neal W. Bassett
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Samuel E. Vederman[1] joined.

---

**C A T T A N I**, Judge:

¶1        Paulo Lupe Rodriguez appeals his convictions of drive by shooting, discharging a firearm at a nonresidential structure, and driving under the influence. Rodriguez argues (1) the superior court erred when it used an anonymous jury, (2) the evidence was insufficient to support his conviction for discharging a firearm at a nonresidential structure, and (3) he cannot be convicted of both discharging a firearm at a nonresidential structure and drive by shooting because the former is a lesser-included offense of the latter. For reasons that follow, we affirm Rodriguez's convictions and sentences.

## FACTS AND PROCEDURAL BACKGROUND

¶2        The night of the incident, Rodriguez drove his truck past a bar that had made him leave minutes before. As he did so, he fired four gunshots at the bar. One bullet passed through a wall and into the bar. Police officers stopped Rodriguez minutes later and arrested him for driving under the influence. A subsequent search of Rodriguez's truck revealed a handgun and four spent shell casings. The bullet found in the bar and the shell casings in the truck had markings consistent with having been fired from Rodriguez's handgun.

¶3        A jury convicted Rodriguez of the charges listed above, but acquitted him of aggravated assault on a peace officer and resisting arrest. The superior court sentenced Rodriguez to concurrent terms of 7.5 years' imprisonment for drive by shooting and discharging a firearm at a nonresidential structure and 6 months in jail for driving under the

---

[1]       The Honorable Samuel E. Vederman, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article VI, Section 3, of the Arizona Constitution.

influence. Rodriguez timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 13-4033.

## DISCUSSION

### I. Anonymous Jury.

¶4 The superior court and counsel referred to prospective and selected jurors by juror numbers rather than by their names during the jury selection process and during trial. Rodriguez argues that this was error because it resulted in the selection of an "anonymous" jury. Rodriguez asserts that this practice dehumanizes jurors and insulates them from responsibility. He contends that jurors who know they have been identified only by a number are less likely to take their responsibilities seriously, are less likely to conscientiously listen to the evidence and participate in deliberations, and that they will surrender their views to a majority opinion just to get out of court early. Rodriguez also argues that this procedure undermined his presumption of innocence. He acknowledges that the practice is routine in Maricopa County Superior Court.

¶5 The superior court explained to the panel during jury selection why it would refer to them by their juror numbers rather than their names. The court noted that the more modern courtrooms in the county had video and audio recording equipment that automatically recorded many proceedings, and that those recordings were available to the general public for a fee. The court explained that some jurors in the past were concerned that their personal information might be available on those recordings, so the court uses juror numbers to alleviate that concern. The court further explained that although the courtroom they were in had not yet been updated, as a practical matter, given the size of the panel and the courtroom, it was easier for the court reporter to record potential jurors' numbers rather than their names during voir dire.

¶6 Rodriguez speculates that the prospective jurors did not believe the court's explanation. Rodriguez suggests that the jurors could have instead thought the court and counsel referred to them by their numbers because Rodriguez presented a threat to them personally, that Rodriguez may have actually made threats against them already, that the court was concealing these threats, and that Rodriguez may have had gang affiliations.

¶7 Because Rodriguez did not object to the use of juror numbers to identify prospective jurors or those jurors ultimately selected to serve, we review only for fundamental error. *See State v. Gendron*, 168 Ariz. 153,

154 (1991). To establish fundamental error, a defendant must show that the error complained of goes to the foundation of his case and takes away a right that is essential to his defense. *State v. Henderson*, 210 Ariz. 561, 568, ¶ 24 (2005). The defendant must also demonstrate that the error was prejudicial. *Id.* at ¶ 26.

**¶8** We discern no error, fundamental or otherwise. First, this was not an anonymous jury. "An 'anonymous jury' is selected from a venire whose members' identifying information—such as names, occupations, addresses, exact places of employment, and other such facts—has been withheld from the parties in order to protect potential jurors and their families." *United States v. Harris*, 763 F.3d 881, 884 (7th Cir. 2014) (citation omitted). An "anonymous" jury deprives the defendant of information that is useful during the jury selection process, particularly in regard to challenges for cause and peremptory strikes. *Id.* at 885. A jury is not "anonymous," however, unless the court withholds at least the jurors' names from the parties. *Id.*

**¶9** Here, the parties knew each prospective juror's full name, zip code, employment status, occupation, employer, residency status, level of education, prior jury experience, and felony conviction history before jury selection began. Arizona Rule of Criminal Procedure 18.3 provides that prior to the start of jury selection, the superior court must furnish the parties a list with all of the above information, and Rodriguez does not contend he did not have this list or the required information prior to or during jury selection. Rodriguez does not contend that he did not also have a copy of the random jury list that identified each potential juror by his or her full name. Further, there is nothing in the record to suggest the potential jurors believed or had any reason to believe Rodriguez did not possess all of the information they provided on their juror information sheets, including their full names.

**¶10** The court and parties also conducted a thorough voir dire in which all the potential jurors identified their occupations or explained whether they were a student, unemployed, or retired. They provided the same information for their spouses, if any. All the potential jurors also explained their marital status, prior jury experience, and whether they had been a party or witness in a case. Many potential jurors provided other information, such as the number and ages of their children and employment information about themselves and their spouses. Potential jurors also discussed whether they or anyone close to them had been victims of crime or if they had been arrested or convicted of crimes. Therefore, the jury was not anonymous. The court, counsel, and

prospective jurors simply never said the prospective jurors' names on the record. Rodriguez had all the information he needed to make his challenges for cause, exercise his peremptory strikes, and obtain an unbiased jury.

¶11          Second, there is nothing in the record to suggest the practice undermined the presumption of innocence. Again, the potential jurors had no reason to think Rodriguez did not know their names or the other personal information they provided on their juror information sheets despite the use of juror numbers. Further, as noted above, the superior court explained to the potential jurors why they would be referred to by their juror numbers. A court's neutral explanation for the use of juror numbers coupled with the suggestion that the procedure is routine is sufficient to guard against the possibility of prejudice. *United States v. Fernandez*, 388 F.3d 1199, 1245 (9th Cir. 2004), *modified at* 425 F.3d 1248 (9th Cir. 2005). There is nothing to suggest the jury believed the use of numbers was anything but routine or that the use of juror numbers had anything to do with Rodriguez personally, his possible guilt, or his case in general. Rodriguez offers nothing but speculation to the contrary.

¶12          Moreover, that the jury acquitted Rodriguez of aggravated assault on a peace officer and resisting arrest further demonstrates the practice did not undermine the presumption of innocence and that the jury was not otherwise biased against Rodriguez simply because the court referred to the jurors by their juror numbers. Finally, the court instructed the jury to determine the facts based only on the evidence admitted in court and to not be influenced by sympathy or prejudice, and we presume jurors follow their instructions. *State v. Dunlap*, 187 Ariz. 441, 461 (App. 1996).

## II.    Sufficiency of the Evidence of Discharging a Firearm at a Nonresidential Structure.

¶13          The three shots that did not strike the bar were the basis for the charge of discharging a firearm at a nonresidential structure. Under A.R.S. § 13-1211(B), "[a] person who knowingly discharges a firearm at a nonresidential structure is guilty of a class 3 felony." Rodriguez argues that the evidence was insufficient to support his conviction for discharging a firearm at a nonresidential structure because there was no evidence he fired any of the three shots "at" the bar, but rather may have simply fired those three shots into the air.

¶14          "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) (citation

omitted). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316 (1987). "We construe the evidence in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant." *State v. Greene*, 192 Ariz. 431, 436, ¶ 12 (1998). In reviewing the record, we resolve any conflict in the evidence in favor of sustaining the verdict. *State v. Guerra*, 161 Ariz. 289, 293 (1989). We do not weigh the evidence, however, because that is the function of the jury. *See id.*

**¶15** The evidence was sufficient to permit a reasonable jury to find that Rodriguez knowingly discharged a firearm at a nonresidential structure. The State presented testimony that at approximately 11:40 p.m. on the night of the incident, security personnel told Rodriguez to leave the bar. Three to four minutes later, police officers at a police substation less than a block away heard four gunshots in quick succession. A bullet from one of those gunshots passed through the rear wall of the bar into the interior, bounced off something inside, and ultimately landed on the floor. Within seconds, a police officer at the substation observed Rodriguez's truck driving away from the rear of the bar with the headlights turned off. Officers followed and eventually stopped Rodriguez's truck after they observed him driving erratically. Rodriguez displayed signs of intoxication, and officers ultimately arrested him for driving under the influence. A subsequent search of the interior of the truck revealed a loaded semiautomatic handgun with one round in the chamber ready to fire, four rounds remaining in the gun's magazine, and four spent shell casings. The State presented expert testimony that the bullet recovered from the bar and the four shell casings found in the truck had markings consistent with having been fired from Rodriguez's handgun.

**¶16** The fact that most of the evidence was circumstantial is of no matter, because the State may prove a conviction by circumstantial evidence alone. *See State v. Burton*, 144 Ariz. 248, 252 (1985). That Rodriguez offered expert testimony that may have raised questions about the connection between Rodriguez's handgun and the bullet and shell casings is also of no matter. It was for the jury to weigh the evidence and determine the credibility of the witnesses. *State v. Cid*, 181 Ariz. 496, 500 (App. 1995). Finally, the State was not required to prove that Rodriguez did not fire his gun in some direction other than at the bar. "[I]t is unnecessary for the prosecution to negate every conceivable hypothesis of innocence when guilt has been established by circumstantial evidence." *State v. Nash*, 143 Ariz. 392, 404 (1985).

### III. Discharging a Firearm at a Nonresidential Structure as a Lesser-Included Offense.

¶17      Rodriguez further argues that discharging a firearm at a nonresidential structure is a lesser-included offense of drive by shooting and, therefore, he cannot be convicted of both. An offense is a lesser-included offense if it is impossible to commit the greater offense without committing the lesser offense. *State v. Miranda*, 200 Ariz. 67, 68, ¶ 2 (2001). A person cannot be convicted of both a greater and lesser-included offense. *State v. Engram*, 171 Ariz. 363, 363 (App. 1991).

¶18      Rodriguez did not raise this issue before the superior court, and his failure to do so waived all but fundamental error. *Gendron*, 168 Ariz. at 154. Rodriguez did not argue in his opening brief that this issue resulted in fundamental error, and we may decline to review for fundamental error under these circumstances. *See State v. Moreno-Medrano*, 218 Ariz. 349, 354, ¶ 17 (App. 2008). Although Rodriguez argues in his reply brief that any error was fundamental, we generally do not consider arguments or issues first raised in a reply brief. *See State v. Watson*, 198 Ariz. 48, 51, ¶ 4 (App. 2000).

¶19      Moreover, even if we were to consider the issue to be properly presented for appellate review, Rodriguez would not be entitled to relief because he fired four shots, each of which was a separate and distinct act. *See State v. Miranda*, 198 Ariz. 426, 430, ¶ 17 (App. 2000). Each shot may thus support a charge for a separate and distinct offense. *Id.*; *State v. Singleton*, 66 Ariz. 49, 57–58 (1947). Here, the State chose to charge Rodriguez for drive by shooting based on one shot and discharging a firearm at a nonresidential structure based on the three other shots. While discharging a firearm at a nonresidential structure may be a lesser-included offense of drive by shooting if the basis of both counts is a single act, the count of discharging a firearm in this case was a separate and distinct offense based on a separate and distinct act(s) and, therefore, was not a lesser-included offense of the count of drive by shooting.[2]

---

2      As relevant here, a person commits drive by shooting if the person intentionally discharges a weapon from a motor vehicle at an occupied structure. A.R.S. § 13-1209(A). A person commits discharging a firearm at a nonresidential structure if the person knowingly discharges a firearm at a nonresidential structure. A.R.S. § 13-1211(B).

**CONCLUSION**

¶20        Rodriguez's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA