**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

  v.

MIGUEL ANGEL ROSAS,
    *Defendant-Appellant.*

No. 09-10011

D.C. No.
4:02-cr-01016-JMR-
CRP

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

  v.

MIGUEL ANGEL ROSAS,
    *Defendant-Appellant.*

No. 09-10013

D.C. No.
4:08-cr-00123-JMR-
CRP

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Arizona
John M. Roll, Chief District Judge, Presiding

Argued and Submitted
December 10, 2009—San Francisco, California

Filed July 27, 2010
Amended August 16, 2010

Before: Betty B. Fletcher, Sidney R. Thomas, and
N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith

11797

**COUNSEL**

Christina M. Cabanillas, Assistant United States Attorney for the District of Arizona, argued the cause for the appellee and was on the briefs. Elizabeth Adair Strange, Assistant United States Attorney for the District of Arizona, filed the briefs. Diane J. Humetewa, United States Attorney for the District of Arizona, also was on the briefs.

Stanton Bloom, of Tucson, Arizona, argued the cause for the defendant-appellant and filed the briefs.

---

**ORDER**

The Opinion filed July 27, 2010, is amended as follows:

1. On slip Opinion page 10811, line 4-5, please replace <we now must determine whether the district court abused its discretion when it found that Rosas was not a minor participant in the crime.> with <we now must determine whether the district court's finding that Rosas was not a minor participant was clearly erroneous.>

2. On slip Opinion page 10812, line 7-8, please replace <The district court's ruling was not clearly erroneous.> with <The district court's finding was not clearly erroneous>.

---

**OPINION**

N.R. SMITH, Circuit Judge:

A defendant may be convicted under 18 U.S.C. § 3146 for failure to appear if he is convicted of a federal crime, released pending sentencing, and then does not attend the sentencing hearing for the initial conviction. The United States Sentenc-

ing Guidelines Manual (the "Guidelines") instructs that, rather than calculating the recommended sentences for failure to appear and the underlying conviction separately, the district court should account for failure to appear by enhancing the sentence for the underlying conviction pursuant to Guidelines § 3C1.1 for obstruction of justice and Guidelines § 3C1.3 for commission of an offense while on release. In addition to using the defendant's failure to attend the original sentencing hearing as the basis for these two enhancements, the district court may also use it as grounds for denying the defendant a reduction for acceptance of responsibility under Guidelines § 3E1.1. Such a sentence does not (1) violate the defendant's constitutional rights to due process and protection from double jeopardy, or (2) constitute impermissible double counting under the Sentencing Guidelines.

## I.   PROCEDURAL HISTORY

Miguel Angel Rosas ("Rosas") was convicted of conspiracy to possess with intent to distribute marijuana and possession with intent to distribute marijuana. He was later convicted of failure to appear at his sentencing hearing on the drug convictions. The district court sentenced Rosas to 63 months' imprisonment, 53 months for the drug convictions and 10 months for failure to appear.

On appeal, Rosas claims that the sentence imposed by the district court violated his constitutional rights. Rosas raises three constitutional claims: (1) the district court engaged in impermissible double-counting in violation of the Fifth Amendment's protection against double jeopardy by imposing two Guidelines sentencing enhancements and denying him one reduction on the basis of the same conduct—his failure to appear for sentencing on his 2002 drug conviction; (2) he was deprived of his Fifth Amendment right to due process of law because he did not receive notice that he could be subject to an increased term of imprisonment for failing to appear at sentence; and (3) the district court enhanced his sentence

beyond the statutory maximum for the crime based upon facts that were not submitted to the jury and proven beyond a reasonable doubt, as required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Rosas also argues that the rule of lenity applies here and raises non-constitutional challenges to his sentence. Specifically, he claims that the district court erred in denying him an acceptance of responsibility reduction and a mitigating role reduction under the Guidelines.

## II. FACTS

Rosas became involved in the drug transaction, for which he was convicted, when he accepted the offer of his co-worker, Donald Simms, to transport a load of marijuana for $10 per pound. On January 15, 2002, Rosas, Simms, and another participant, Jessie Tatum, drove together to a Tucson restaurant to meet two potential buyers to arrange for the sale of 250 pounds of marijuana; the buyers were an undercover Drug Enforcement Administration ("DEA") agent and a confidential source. At the meeting, Simms provided the agent a "sample" of marijuana, and the parties agreed to a purchase of 250 pounds of marijuana at a price of $500 per pound, totaling $125,000.

The next day, Rosas, Simms, and Tatum again drove together to meet the buyers. Simms then went with the DEA agent to a separate location to make sure that the buyers had the money. Once Simms was presented with a bag containing $100,000 in cash, he called Tatum and instructed him to have Rosas deliver the drugs to a predetermined drop-off point. Rosas drove a truck to Simms' house, where he helped load it with the marijuana. Rosas then drove it to the drop off point, while Tatum and Simms followed in a separate vehicle. Upon arrival at the drop location, DEA agents attempted to arrest the group; Simms and Rosas fled on foot and escaped. Rosas was not arrested until May 29, 2002. At that time, Rosas was indicted for Conspiracy to Possess with Intent to Distribute Marijuana in violation of 21 U.S.C. § 846, and Pos-

session with Intent to Distribute Marijuana in violation of 21 U.S.C. § 841(a)(1).

Although Rosas did not enter into a plea agreement, he pleaded guilty and cooperated with the authorities. Rosas was released on $15,000 bond on June 17, 2002. On March 19, 2003, the day before a state court sentencing for possession of a narcotic drug for sale (and two weeks before federal sentencing on these charges), Rosas fled to Mexico. At some later point in time, Rosas returned to the United States. On December 3, 2007, he was again arrested for possession of marijuana for sale. A federal grand jury indicted Rosas for failure to appear in violation of U.S.C. § 3146. He pleaded guilty. The failure to appear conviction and the underlying 2002 drug conviction cases were consolidated for sentencing. This appeal arises out the sentencing hearing conducted in that consolidated case.

Before Rosas fled the country, a Presentence Investigation Report ("PSR") had been completed in anticipation of his upcoming sentencing. That PSR made findings and recommendations regarding Rosas's sentencing on the two drug convictions, 21 U.S.C. §§ 841(a)(1) and 846, which carried a statutory maximum of 40 years on each count. The Guidelines base offense level for a violation of these statutes involving 100 kilograms of marijuana is 26. The PSR found Rosas eligible for a two level "safety valve" reduction, Guidelines § 5C1.2, and a three level reduction for acceptance of responsibility, Guidelines § 3E1.1. This resulted in a total offense level of 21. After calculating the total offense level and Rosas's Criminal History Category, the PSR arrived at a Guidelines range of imprisonment from 37 to 46 months.

After Rosas's arrest in December of 2007, a second PSR was prepared for his sentencing (the "2008 PSR"). The 2008 PSR reflects the significant consequences for Rosas's failure to appear and flight from the jurisdiction. The PSR calculated

a base offense level of 24 for the 2002 drug charges,[1] and again found him eligible for a two level "safety valve" reduction pursuant to Guidelines § 5C1.2. However, because of Rosas's flight from custody, the PSR calculated (1) a two level enhancement for obstruction of justice, pursuant to Guidelines § 3C1.1; (2) a three level enhancement for commission of an offense while on release, pursuant to Guidelines § 3C1.3 and 18 U.S.C. § 3147; and (3) no reduction for acceptance of responsibility, pursuant to Guidelines § 3E1.1. The 2008 PSR recommended no reduction for acceptance of responsibility, because Rosas's "failure to appear outweigh[ed] his guilty plea and [was] inconsistent with affirmative acceptance of responsibility and genuine remorse." The 2008 PSR calculated his total offense level to be 27, resulting in a Guidelines range of 70 to 87 months imprisonment. The 2008 PSR recommended a punishment of 70 months imprisonment, a $300 special assessment, a $15,000 fine, and 5 years supervised release. Of that total term, 60 months were attributable to the 2002 drug conviction and another 10 months to the failure to appear conviction.

Rosas lodged numerous objections to the PSR. Relevant to this appeal, Rosas argued that (1) he should not have received an enhancement for both obstruction of justice, Guidelines § 3C1.1, and commission of an offense while on release, Guidelines § 3C1.3, as those two enhancements punish the same behavior and enhancing for both constitutes double counting; (2) even if that does not constitute double counting, a statutory sentencing enhancement under 18 U.S.C. § 3147 does not apply—rather, the statute under which he was convicted, § 3146, encompasses the field—and, therefore, he

---

[1]The 2008 PSR calculated the base offense level for a drug transaction involving 80 to 100 kilograms of marijuana. The PSR provides no explanation for this change from the 2002 PSR—which calculated the base offense level for a drug transaction involving over 100 kilograms of marijuana. However, as no objection was raised to this discrepancy and as it favors the Defendant, we see no reason to address it.

should not have received an enhancement under Guidelines § 3C1.3; (3) he should have received an acceptance of responsibility reduction, Guidelines § 3E1.1; and (4) he should have received a mitigating role reduction, Guidelines § 3B1.2. The Probation Office declined to amend the PSR as to these issues.

At the sentencing hearing, the district court agreed with most of the PSR. The court did grant Rosas's request for a 1 level downward departure based on 18 U.S.C. § 3553 factors. The court then sentenced Rosas to 53 months for the 2002 drug crimes and a consecutive 10 months for the failure to appear, for a total of 63 months in prison. The court ordered that Rosas pay the $300 special assessment, but waived the $15,000 fine.

### III.   ANALYSIS

#### A.   Challenges to the Nature of the Sentencing

Rosas's failure to appear for sentencing and flight from the jurisdiction was considered as relevant conduct at numerous points in his 2008 sentencing calculation. We must decide whether any of those calculations was in error and if the cumulative affect of the enhancements violated Rosas's constitutional rights. We review de novo (1) the district court's interpretation of the Guidelines, *United States v. Tankersley*, 537 F.3d 1100, 1110 (9th Cir. 2008), and (2) claims that the sentence is unconstitutional, *United States v. Mercado*, 474 F.3d 654, 656 (9th Cir. 2007).

**[1]** When sentencing a defendant for both an underlying offense and an obstruction offense—such as § 3146, failure to appear at sentencing—the Guidelines group the sentences together and account for the obstruction offense by imposing a two level enhancement to the underlying offense level, under Guidelines § 3C1.1. U.S. Sentencing Guidelines Manual § 3C1.1 cmt. n.8. By committing an obstruction offense,

a defendant has also committed an offense while on release, potentially subjecting the defendant to an additional consecutive sentence under § 3147. We must decide whether a sentence enhancement pursuant to § 3147 may be applied to a defendant when the only offense committed while on release was a violation of § 3146, failure to appear, an issue of first impression in this circuit. Therefore, if we find that § 3147 applies to those sentences where the only offense committed while on release is the failure to appear, Rosas was properly subject to two sentencing enhancements: (1) a two level enhancement under Guidelines § 3C1.1; and (2) a three level enhancement under Guidelines § 3C1.3. We hold that a defendant convicted of the offense of failure to appear may be subject to a sentence enhancement (on his underlying conviction) under § 3147, for committing an offense while on release.

**[2]** "The starting point for our interpretation of a statute is always its plain language." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1032 (9th Cir. 2009) (internal quotation omitted). "The plain meaning governs unless a clearly expressed legislative intent is to the contrary, or unless such plain meaning would lead to absurd results." *Dyer v. United States*, 832 F.2d 1062, 1066 (9th Cir. 1987) (citation omitted). The text of the statute at issue provides that:

> A person convicted of an offense committed while released under this chapter shall be sentenced, in addition to the sentence prescribed for the offense to . . . a term of imprisonment of not more than ten years of the offense is a felony . . . . A term of imprisonment imposed under this section shall be consecutive to any other sentence of imprisonment.

18 U.S.C. § 3147. "Section 3147 clearly and unambiguously mandates that the courts impose additional consecutive sentences on persons convicted of crimes they commit while released on bond." *United States v. Kentz*, 251 F.3d 835, 840 (9th Cir. 2001) (quoting *United States v. Lewis*, 991 F.2d 322,

323 (6th Cir. 1993)); *see also* U.S. Sentencing Guidelines Manual § 3C1.3. In this case, Rosas committed an obstruction offense, failure to appear for sentencing, while on bond. The statute contains no exception for § 3146 violations or for violations that, by their nature, can only be committed while on bond (such as failure to appear). "There is nothing exceptional about the statute, nor is it vague or ambiguous. The language is plain and the meaning is clear. Our statutory construction inquiry, therefore, is at an end." *United States v. Patterson*, 820 F.2d 1524, 1526 (9th Cir. 1987) (citing *Burlington N. Railroad Co. v. Okla. Tax Comm'n*, 481 U.S. 454 (1987)). The § 3147 enhancement unambiguously applies to Rosas.

**[3]** We note that four other circuits "have held that the plain language of the relevant statutes mandates application of the § 3147 enhancement to the offense of failure to appear in violation of § 3146." *United States v. Dison*, 573 F.3d 204, 207 (5th Cir. 2009) (citing sister circuit opinions: *United States v. Clemendor*, 237 F. App'x 473 (11th Cir. 2007) (per curium) (unpublished); *United States v. Fitzgerald*, 435 F.3d 484 (4th Cir. 2006); and *United States v. Benson*, 134 F.3d 787 (6th Cir. 1998)). As to Rosas's claim that the rule of lenity dictates a different result, we agree with our sister circuits that, in the face of such unambiguous statutory language, the rule of lenity does not apply here. *See United States v. Johnson*, 529 U.S. 53, 59 (2000) ("Absent ambiguity, the rule of lenity is not applicable to guide statutory interpretation."); *see also Dison*, 573 F.3d at 208 (Fifth); *Clemendor*, 237 F. App'x at 477-78 (Eleventh); *United States v. Fitzgerald*, 435 F.3d at 486-87 (Fourth); and *Benson*, 134 F.3d at 788 (Sixth).

**[4]** Contrary to Rosas's assertion, a district court does not violate the Fifth Amendment's Double Jeopardy Clause by accounting for a defendant's failure to appear conviction by enhancing the sentence for the underlying conviction for obstruction of justice and commission of an offence while on release. Nor does the court's additional denial of an acceptance of responsibility reduction render the sentence unconsti-

tutional. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). Here the legislature established a maximum sentence of ten years and Rosas's sentence falls far short of that mark, therefore Rosas's constitutional claim must fail.

**[5]** Further, the district court did not engage in impermissible double counting under the Guidelines. We have held that the Sentencing Commission understands double counting and "expressly forbids it where it is not intended." *United States v. Reese*, 2 F.3d 870, 894 (9th Cir. 1993) (quoting *United States v. Williams*, 954 F.2d 204, 208 (4th Cir. 1992)). Here, the Guidelines allow for failure to appear to provide the basis for two enhancements, obstruction of justice and commission of an offense while on release. Finally, denying Rosas a reduction for Acceptance of Responsibility on the basis of his failure to appear did not constitute double counting "because the acceptance provision constitutes a sentencing benefit which a defendant may be entitled to receive. The fact that a defendant may fail to receive the reduction does not result in an additional enhancement." *United States v. Rutledge*, 28 F.3d 998, 1004 (9th Cir. 1994). Therefore, the district court did not engage in impermissible double counting.

**[6]** So long as these enhancements do not raise a defendant's total sentence to a term longer than the statutory maximum, the conduct upon which these enhancements are based need not have been submitted to a jury. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). In order to bring an *Apprendi* claim, the defendant must show that "the actual sentence imposed [is] longer than the maximum sentence" for the crime of conviction. *United States v. Ellis*, 241 F.3d 1096, 1104 (9th Cir. 2001). Here, Rosas faced a statutory maximum of 40 years for each of the two drug offenses and 10 years for his failure to appear. Because his actual sentence falls far

below that (at a little over five years), he cannot make out an *Apprendi* claim.

**[7]** Finally, we reaffirm this Circuit's position that a PSR gives pre-sentence notice, satisfying both constitutional due process requirements and the Guidelines notice requirement. *Kentz*, 251 F.3d at 840. The Ninth Circuit recognizes a notice requirement for enhancements under § 3147 as calculated in Guidelines § 3C1.3. *Id.* (citing U.S. Sentencing Guidelines Manual § 3C1.3, comment. (backg'd)). "[T]his is a pre-*sentence* requirement rather than a pre-release requirement."**²** *Id*. at 841 (emphasis in original). A PSR satisfies that requirement. *Id.* at 840. Rosas admits that he signed a PSR stating the conditions of release and appearance. We recognize that the Government stipulated that Rosas was not advised of the consequences of failing to appear at sentencing (for reasons unclear on this record). However, both parties concede that Rosas signed the PSR, which constitutes sufficient notice as a matter of law. *Id.* Therefore, we find that Rosas received sufficient notice of the potential consequences of his decision not to appear for his original sentencing hearing.

B.   Challenges to the Application of the Guidelines

The district court denied offense level reductions for acceptance of responsibility and having a mitigating role in the criminal activity. Having held the application of these assessments constitutional above, we now review the court's application of these Guidelines to Rosas's case.

When reviewing a district court's sentencing for error, "we first consider whether the district court committed significant procedural error, then we consider the substantive reasonableness of the sentence." *United States v. Carty*, 520 F.3d 984,

---

**²**Having found this a pre-sentence requirement, rather than pre-release requirement, Rosas's argument that he did not understand the 2002 PSR, which he signed, is moot.

993 (9th Cir. 2008) (en banc). Because Rosas makes no challenge to the substantive reasonableness of the sentence, we review only for significant procedural error in the district court's interpretation and application of the Guidelines. We review "the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of [the] case for abuse of discretion, and the district court's factual findings for clear error." *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005). "A district court's decision about whether a defendant has accepted responsibility is a factual determination reviewed for clear error." *United States v. Cantrell*, 433 F.3d 1269, 1284 (9th Cir. 2006) (alteration omitted) (quoting *United States v. Velasco-Medina*, 305 F.3d 839, 853 (9th Cir. 2002)). The district court's determination about whether a defendant was engaged in a mitigating role is also reviewed for clear error. *See Cantrell*, 433 F.3d at 1283-84 (applying the clear error standard to its review). Under the clear error standard of review, we give the district court a great degree of deference, reversing only if we come to a "definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). We hold that the district court did not clearly err in its denial of an offense level reduction for (1) acceptance of responsibility; and (2) involvement in the criminal activity in a mitigating role.[3]

### 1. Acceptance of Responsibility

**[8]** A defendant may receive a decrease in his total offense level when the defendant "*clearly* demonstrates acceptance of

---

[3]The government argues that Rosas failed to challenge the district court's application of the Guidelines at sentencing. Where the appealing party fails to raise an issue at sentencing, we review for plain error. *See* Fed. R. Crim. P. 52(b). However, because we find that Rosas's claims fail under the clear error standard of review, we decline to reach this issue.

responsibility for his offense." U.S. Sentencing Guidelines Manual § 3E1.1 (emphasis added). However, "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." U.S. Sentencing Guidelines Manual § 3E1.1, cmt. n.4. Thus, Rosas's conviction under 18 U.S.C. § 3146, by itself, renders the district court's decision to deny an acceptance of responsibility reduction reasonable absent an extraordinary case.

**[9]** Of course, Rosas believes that he has an extraordinary case. In support of his position, he presented medical documents and letters to the district court during sentencing. Rosas attempted to show that he left for Mexico because his grandfather was ill and was calling for Rosas, the only one capable of managing the family ranch. These facts, while not irrelevant, do not change the fact that his flight was voluntary and that he had not accepted the responsibility for, and consequences of, his actions. Therefore, the court's denial of an acceptance of responsibility reduction was not clearly erroneous.

2.    Mitigating Role

**[10]** In order to qualify for a mitigating role reduction, a defendant must demonstrate by a preponderance of the evidence that he was a minimal or minor participant in the criminal activity. *United States v. Zakharov*, 468 F.3d 1171, 1181 (9th Cir. 2006). "It is not enough that [Rosas] was less culpable than [his] co-participants, or even that [he] was among the least culpable of the group, because a minimal or minor participant adjustment under § 3B1.2 is available only if [Rosas] was 'substantially' less culpable than [his] co-participants." *United States v. Cantrell*, 433 F.3d 1269, 1283 (9th Cir. 2006).

**[11]** We hold that the district court's consideration of Rosas's failure to appear at his 2002 sentencing hearing was not improper. "[T]he amended guidelines permit district courts to consider all relevant conduct, including collateral conduct beyond the charged offense." *United States v. Webster*, 996 F.2d 209, 212 (9th Cir. 1993). Relevant collateral conduct includes all purposeful acts committed "in the course of attempting to avoid detection or responsibility for that offense." U.S. Sentencing Guidelines Manual § 1B1.3.

**[12]** The district court properly considered Rosas's 2008 failure to appear conviction. The district court concluded that Rosas fled, because Rosas believed that he would not be caught and, therefore, would not have to take responsibility for his actions. Because the court found that the conduct associated with Rosas's 2008 failure to appear conviction was related to an attempt to avoid responsibility for the earlier offense, the district court did not err in considering that conduct.[4]

**[13]** Finding that consideration of Rosas's failure to appear was not error, we now must determine whether the district court's finding that Rosas was not a minor participant was clearly erroneous. The mitigating role reduction is a "determination that is heavily dependent upon the facts of the particular case." *United States v. Duran*, 189 F.3d 1071, 1089 (9th Cir. 1999) (quoting U.S. Sentencing Guidelines Manual § 3B1.2, cmt. (backg'd)).

In making its determination regarding Rosas's role in the criminal enterprise, the court looked to Rosas's conduct in

---

[4]Rosas also claims that the district court considered drug activity he engaged in after he failed to appear at the 2002 sentencing hearing. We recognize that the district court's language was ambiguous and perhaps inarticulate, when it commented about "not only [Rosas's] past and future involvement in drugs . . . ." However, upon his objection to consideration of his involvement in drugs after 2002, the district court clarified its position when it expressly stated that it would not consider any later drug charge.

comparison to that of Simms and Tatum. Before the sentencing proceeding, the district court reviewed the PSR, Rosas's objections, sentencing memoranda from both the government and Rosas, seventy pages of DEA reports relating to the criminal activity, and letters on behalf of Rosas submitted by defense counsel, Rosas himself, and other individuals. The district court also allowed extensive argument from the parties and invited input from the Probation Department. While the court recognized that Rosas's conduct was less culpable than that of Simms or Tatum, it did not find that Rosas's conduct was so much less that he was entitled to a mitigating role reduction.

**[14]** The district court based its finding on Rosas's "entire involvement in the case." Consistent with *Cantrell*, the court recognized that "you can have three people who have varying degrees of culpability but who all play major roles." The district court found that Rosas (1) was the driver and loader of the truck, (2) was responsible for the drug load, (3) knew where the drugs were being kept, and (4) fled after the bust went awry. Given the district judge's extensive review, we are not left with a "definite and firm conviction that a mistake has been committed." The district court's finding was not clearly erroneous.

Rosas argues that the district court erred, because it compared his conduct with that of Simms and Tatum but did not consider other unknown participants in the drug chain, including "the source of the marijuana, distributers, packagers, sellers, etc." Rosas relies on *United States v. Rojas-Millan*, 234 F.3d 464, 472 (9th Cir. 2000), which stated that "the district court should have evaluated [the defendant's] role relative to all participants in the criminal scheme for which he was charged."

However, as *Rojas-Millan* recognizes, defendants are not to be compared to the hypothetical "average participant." *Id.* at 473. In *Rojas-Millan*, the defendant was stopped as he carried

drugs from a supplier in Los Angeles to a distributor in Reno; he was, apparently, nothing more than a courier. *Id.* at 468. The defendant and his passenger were charged with possession with intent to distribute, conspiracy to possess with intent to distribute, and interstate travel in aid of racketeering. *Id.* at 467. The district court found that the defendant was not entitled to a mitigating role reduction, because he was not substantially less culpable than the passenger of the car. *Id.* at 472. We reversed, requiring the district court to first determine whether it had "sufficient evidence of [the supplier's and distributor's] existence and participation in the overall scheme," *id.* at 474; and, if so, to then determine whether the defendant was substantially less culpable than "other likely actors, such as the alleged Los Angeles supplier and the Reno distributor," *id.* at 473-74.

**[15]** The facts here are unlike those found in *Rojas-Millan*. There exists little to no evidence concerning criminals supplying the marijuana to Rosas, Simms, and Tatum. Further, Rosas, Simms, and Tatum were more than mere couriers, they were traffickers, who set up their own deals and supplied the buyers directly from their stores. Every drug trafficking defendant could point to an unknown network preceding them in the drug trade. Such an argument will normally be ineffective when considering whether the defendant is entitled to a mitigating role reduction.

## IV.   CONCLUSION

Accordingly, we **AFFIRM** the sentence imposed by the district court.