**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 20 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>     Plaintiff - Appellee, <br><br>   v. <br><br> MANUEL YEPIZ, aka's Martin Sanchez; et al., <br><br>     Defendant - Appellant. | No. 07-50051 <br><br> D.C. No. CR-05-00578-JFW-7 <br><br> MEMORANDUM* |
| UNITED STATES OF AMERICA, <br><br>     Plaintiff - Appellee, <br><br>   v. <br><br> JOSE LUIS MEJIA, a/k/ Jose Luiz Mejia, Jose Nernedes, Juan Martinez, Jose Mejia, Check Mejia, Jose Al Mejia, Joe Morin, Jose L. Mejia, "Checho", "Joe" and "Cheech", <br><br>     Defendant - Appellant. | No. 07-50062 <br><br> D.C. No. CR-05-00578-JFW-37 |

---

    * This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

| UNITED STATES OF AMERICA, | No. 07-50063 |
| Plaintiff - Appellee, | D.C. No. CR-05-00578-JFW-35 |
| v. | |
| FRANCISCO ZAMBRANO, a/k/a Franky Boy and "Franky", | |
| Defendant - Appellant. | |

| UNITED STATES OF AMERICA, | No. 07-50067 |
| Plaintiff - Appellee, | D.C. No. CR-05-00578-JFW-21 |
| v. | |
| JESUS CONTRERAS, aka Jessie Contreras; et al., | |
| Defendant - Appellant. | |

| UNITED STATES OF AMERICA, | No. 07-50070 |
| Plaintiff - Appellee, | D.C. No. CR-05-00578-JFW-44 |
| v. | |
| MARIANO MEZA, | |
| Defendant - Appellant. | |

2

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 07-50098 |
| Plaintiff - Appellee, | D.C. No. CR-05-00578-JFW-36 |
| v. | |
| SERGIO MEJIA, aka Robert Mesa; et al., | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 07-50133 |
| Plaintiff - Appellee, | D.C. No. CR-05-00578-JFW-22 |
| v. | |
| GILBERTO CARRASCO, a/k/a GILBERTO CARRASCO, JR.; et al., | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 07-50142 |
| Plaintiff - Appellee, | D.C. No. CR-05-00578-JFW-31 |
| v. | |
| ERNESTO OROZCO MENDEZ, a/k/a "GORDO", "EL GORDO", ERNESTO MIJARES, ERNESTO MENDOZA MIJARES, ERNESTO MENDOZA OROZCO (Birth Name), | |
| Defendant - Appellant. | |

3

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 07-50264 |
| Plaintiff - Appellee, | D.C. No. CR-05-00578-JFW-1 |
| v. | |
| RAFAEL YEPIZ, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted December 7, 2015
Pasadena, California

Before: REINHARDT, NOONAN, and NGUYEN, Circuit Judges.

Appellants—Manuel Yepiz, Jose Luis Mejia, Francisco Zambrano, Jesus Contreras, Mariano Meza, Sergio Mejia, Gilberto Carrasco, Rafael Yepiz, and Ernesto Mendez—are all alleged members of the Vineland Boys gang ("VBS") and timely appealed their convictions and sentences. The court has concurrently filed an opinion addressing appellants' joint *Brady* claims and Manuel Yepiz's Sixth Amendment Right to Counsel claim. This memorandum disposition addresses the remaining issues before the court.

4

# I. VOIR DIRE

During voir dire, juror sidebars were held in a jury room adjacent to the courtroom with counsel and a court reporter. The district court found that it was impossible to move the defendants to the jury room without the prospective jurors noticing their shackles, and therefore ordered that they remain seated in the courtroom at all times. The district court also found that it was equally infeasible to clear the courtroom each time a prospective juror needed to be questioned privately. Defense counsel were permitted to leave at any point to confer with their clients, but the defendants were not permitted in the jury room. General voir dire questions of a non-sensitive nature were conducted in open court. However, issues relating to bias or prejudice, and some hardship questions were discussed in the jury room. The court interviewed 94 potential jurors, 77of whom were, at some point, questioned in the jury room. Thirty jurors were questioned only as to hardship or publicity, and 47 were questioned as to other topics—primarily bias or prejudice. Appellants contend that this procedure violated (1) their right to be present at trial, and (2) their right to a public trial. "Although we review the district court's conduct of voir dire for abuse of discretion, questions of law that arise during the course of voir dire are reviewed de novo." *United States v. Reyes*, 764 F.3d 1184, 1188 (9th Cir. 2014) (internal citations omitted).

The voir dire procedures fashioned by the district court did not violate defendants' constitutional right to presence, which must at times yield to the "day-to-day realities of courtroom life," as well as "society's interest in the administration of criminal justice." *Rushen v. Spain*, 464 U.S. 114, 119 (1983). In this case, the district court provided defendants as much ability to observe prospective jurors and participate in the voir dire process as possible in light of the countervailing considerations of security, juror privacy, and courtroom logistics. We therefore cannot say that "a fair and just hearing [was] thwarted by" defendants' absence from certain portions of voir dire. *Snyder v. Com. of Mass.*, 291 U.S. 97, 107–08 (1934); *cf. Rice v. Wood*, 77 F.3d 1138, 1145 (9th Cir. 1996); *Reyes*, 764 F.3d at 1190.

Assuming *arguendo* that the voir dire procedures violated defendants' statutory right to be present under Federal Rule of Criminal Procedure 43, we hold that the error was harmless because "there is no reasonable possibility that prejudice resulted from the [defendant's] absence." *United States v. Rosales-Rodriguez*, 289 F.3d 1106, 1109 (9th Cir. 2002) (quoting *United States v. Kupau*, 781 F.2d 740, 743 (9th Cir. 1986)); *see also United States v. Bordallo*, 857 F.2d 519, 523 (9th Cir. 1988).

Defendants never argued that the voir dire procedures violated their right to a public trial before the trial court. This claim is therefore forfeited on appeal. *Freytag v. C.I.R.*, 501 U.S. 868, 896 (1991); *United States v. Cazares*, 788 F.3d 956, 971 (9th Cir. 2015).

## II. PRETRIAL PUBLICITY

At the close of trial, the district court denied defendants' motion for a mistrial based in part on juror exposure to pretrial publicity. The motion claimed that an article published by the *Daily News* entitled "Vineland Boys About to Face Judgement Days" violated defendants' Sixth Amendment right to a trial by an impartial jury. A trial court's finding of impartiality may be overturned only for manifest error. *Mu'Min v. Virginia*, 500 U.S. 415, 428 (1991). "[P]retrial publicity, even pervasive, adverse publicity does not inevitably lead to an unfair trial." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 554 (1976). The exposure to pretrial publicity in this case bears little resemblance to the extreme cases that have given rise to a violation of the right to an impartial jury. *Compare Skilling v. United States*, 561 U.S. 358 (2010), *with Irvin v. Dowd*, 366 U.S. 717, 723 (1961). Accordingly, we find that the publicity in this case does not implicate the Sixth Amendment.

## III. BATSON

7

During voir dire on August 22, 2006, the government exercised a peremptory challenge against Juror number 6, a Hispanic male. Defendants objected, arguing that the government exercised its peremptory on the basis of the juror's race. The district conducted a *Batson* analysis and concluded that the government's reasons constituted a credible, race-neutral basis for striking Juror 6, and accordingly overruled the objection. Defendants now contend that the district court erred. "On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008).

Defendants argue that the district court's failure to engage in a comparative analysis on the record amounts to procedural error that is *per se* reversible. *See generally Ali v. Hickman*, 584 F.3d 1174, 1184 (9th Cir. 2009). However, this court has recently rejected this precise argument. *Murray v. Schriro* 745 F.3d 984, 1005 (9th Cir. 2014).

Defendants further argue that in rejecting their *Batson* objection to Juror 6, the district court improperly considered the fact that defendants would have the opportunity to have other Hispanic individuals on the jury because three of the next nine potential jurors to be questioned were Hispanic. As an initial matter, defendants cite no case supporting the proposition that this would constitute

reversible error. Moreover, it was defense counsel—not the trial court—that initially commented on the ethnicity of the potential jurors to be questioned. Read in context, the district court's remarks were merely a response to counsel's comment and played no part in its *Batson* analysis.

## IV. ANONYMOUS JURY

Contreras and Mendez contend that the district court empaneled an anonymous jury without providing the proper safeguards to protect their constitutional rights to a fundamentally fair trial and their presumption of innocence. Because neither Contreras's nor Mendez's attorneys objected to the empaneling of an anonymous jury below, we review for plain error. *See United States v. Marcus*, 560 U.S. 258 (2010).

While this circuit has never explicitly stated which factors make a jury anonymous, the Seventh Circuit has held that empaneling an anonymous jury "requires withholding, at least, the jurors' names from the parties." *United States v. Harris*, 763 F.3d 881 (7th Cir. 2014). In *Harris*, the court found that a jury was not anonymous where (1) the district court did not tell the jury their names were being withheld from the parties; (2) the court explicitly named one juror on the record; and (3) the jury appeared comfortable revealing personal information about themselves during voir dire.

9

Here, (1) the jurors were addressed by name throughout the first day of voir dire, with the judge only beginning to refer to them by number on the second day; (2) the district court provided counsel with a list containing the name, badge number, and city of residence of each prospective juror, providing them with sufficient information to conduct voir dire; (3) the judge referred to a juror by name after implementing the number-only system; and (4) prospective jurors felt comfortable revealing identifying information such as their employers, job descriptions, and neighborhoods in open court. We therefore find that the jury in this case was not anonymous, and defendants' claims fail.

## V. JUROR MISCONDUCT

On November 30, 2006—after the jury had reached a verdict, but before all defendants had been sentenced—defendants R. Yepiz and Contreras moved for a new trial on the basis of juror misconduct, attaching declarations purporting to show that jurors saw VBS graffiti on their train ride to the courthouse. The district court took all admissible portions of the declaration as true for purposes of ruling on the motion for a new trial and denied it. We review the district court's denial of a motion for a new trial based on juror misconduct for abuse of discretion. *United States v. Murphy*, 483 F.3d 639, 642 (9th Cir. 2007). We affirm the district court's ruling because the alleged extrinsic evidence was entirely cumulative of evidence

10

presented at trial, and evidence of VBS graffiti played a minor part in the government's case.

## VI. GRIFFIN ERROR

Defendants contend that a portion of the government's remarks during rebuttal impermissibly drew attention to defendants' failure to testify, in violation of *Griffin v. California*, 380 U.S. 609 (1965). Both parties agree that this Court must review this claim for plain error in light of defendants' failure to object at trial. *See United States v. Kennedy*, 714 F.2d 968, 976–77 (9th Cir. 1983). Read in context, the prosecutor's comments were directed at defense counsel, not defendants, and therefore did not violate *Griffin*. *See United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1132 (9th Cir. 2005).

## VII. PROSECUTORIAL MISCONDUCT

Defendants contend that the government engaged in prosecutorial misconduct when it told the jurors that it was their job to convict defendants. Defendants failed to raise an objection to the government's comments at trial; accordingly, we review for plain error. *United States v. Henderson*, 241 F.3d 638, 652 (9th Cir. 2000). Read in context, the government was "arguing that, *if* the jury finds that the prosecution has met its burden of proving the elements beyond a reasonable doubt, *then* it is the jury's duty to convict. Understood in that way, the

11

prosecutor's statement is clearly proper." *United States v. Gomez*, 725 F.3d 1121, 1131 (9th Cir. 2013) (emphasis in original). This district court did not plainly err.

## VIII. ADMISSION OF EVIDENCE

Defendants contend that the district court erred by admitting certain evidence under Federal Rule of Evidence 403, and by reading a summary of the indictment. A district court's rulings pursuant to Rule 403 is given "considerable deference," *United States v. Cordoba*, 194 F.3d 1053, 1063 (9th Cir. 1999), and is reversed for abuse of discretion only if such "nonconstitutional error more likely than not affected the verdict." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000). Among the litany of evidentiary objections advanced by defendants, many were never raised below and should therefore be reviewed for plain error. However, we need not engage in a plain error analysis because defendants have failed to show that the district court abused its discretion as to any of the contested evidence. *See Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004); *United States v. Matera*, 489 F.3d 115, 121 (2d Cir. 2007); *United States v. Fernandez*, 388 F.3d 1214, 1224 (9th Cir. 2004); *United States v. Rodriguez*, 766 F.3d 970, 986–87 (9th Cir. 2014); *United States v. Ganoe*, 538 F.3d 1117, 1124 (9th Cir. 2008); *Hankey*, 203 F.3d at 1173. Furthermore, the district court did not err by reading a summary of the indictment. *United States v. Polizzi*, 500 F.2d 856, 876 (9th Cir. 1974).

12

## IX. SEALED DOCUMENTS

Defendants argue that the district court's orders sealing numerous documents violated their right to a public trial under the Sixth Amendment. This claim was never raised below and we therefore review for plain error.

Defendants have failed to cite even a single case holding that the sealing of documents violated a defendant's Sixth Amendment right to a public trial. Defendants' failure show that the error was "clear on its face under current law" is fatal under plain error review. *United States v. Campos*, 217 F.3d 707, 712 (9th Cir. 2000). Moreover, we have previously rejected claims that seek to constitutionalize mere disagreement with a district court's sealing orders. *See United States v. Graf*, 610 F.3d 1148, 1168 (9th Cir. 2010) (citing *United States v. Shryock*, 342 F.3d 948, 983 (9th Cir. 2003)).

## X. R. YEPIZ'S REQUESTS FOR SUBSTITUTION OF COUNSEL

R. Yepiz argues that the district court violated his Sixth Amendment right to counsel by denying his pre-trial requests for substitution of counsel and a continuance of the trial, that the denials constitute structural error, and that he is therefore entitled to reversal of his conviction. We review denials of motions for substitution and continuance for abuse of discretion. *United States v. Rivera-Corona*, 618 F.3d 976, 978 (9th Cir. 2010); *United States v. Nguyen*, 262 F.3d 998,

13

1002 (9th Cir. 2001).

District courts are granted "wide latitude" in balancing a defendant's right to counsel of choice with the need for fairness and the demands of their calendars. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006). Thus, when a defendant seeks to substitute counsel, the defendant may generally do so "for any reason or no reason" so long as "the substitution would [not] cause significant delay or inefficiency or run afoul of . . . other considerations," such as the "fair, efficient and orderly administration of justice." *Miller v. Blacketter*, 525 F.3d 890, 896 (9th Cir. 2008); *see also Rivera-Corona*, 618 F.3d at 979–80, 1115. "Broad discretion" must also "be granted [to] trial courts on matters of continuances." *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983).

We find that the district court did not abuse its discretion when it denied R. Yepiz's eve-of-trial requests for substitution of counsel and a continuance, given that granting the requests would have substantially burdened the court. *Gonzalez-Lopez*, 548 U.S. at 152. The court quickly inquired into R. Yepiz's requests for substitution, and stated that it would not object to a substitution so long as R. Yepiz's new attorney would be prepared to move forward with trial on August 8, 2006. The court only denied R. Yepiz's requests after learning that his new attorney would not be ready to proceed by that date and would instead require a

14

continuance.  The court then reasonably determined that a continuance would substantially burden its proceedings after considering, among other concerns, (1) the  numerous other parties joined in the suit, (2) that the trial date had been set for more than a year; (3) numerous other cases had been continued to make room for this trial, which was expected to last three months; and (4) more than 11,000 jury summonses had already been sent out.  The district court's decision to deny R. Yepiz's requests was thus well within its "wide latitude."

## XI.  R. YEPIZ'S MOTION TO SUPPRESS WIRETAP EVIDENCE

R. Yepiz argues that the district court erred in denying his motion to suppress evidence obtained through wiretaps based on an alleged lack of necessity, 18 U.S.C. §§ 2518(1)(c), and by denying his requests for a *Franks* hearing and *in camera ex parte* review. A district court's decision to deny a *Franks* hearing is reviewed de novo, while underlying factual findings relating to materiality are reviewed for clear error. *United States v. Ippolito*, 774 F.2d 1482, 1484 (9th Cir. 1985). We review the issuing court's finding of necessity for abuse of discretion. *United States v. McGuire*, 307 F.3d 1192, 1197 (9th Cir. 2002). We review a district court's denial of a motion for an *in camera ex parte* hearing to examine a confidential informant for abuse of discretion. *United States v. Vorasane*, 583 F.

15

App'x 709, 710-11 (9th Cir. 2014) (unpublished) (citing *United States v. Napier*, 436 F.3d 1133, 1136 (9th Cir. 2006)).

R. Yepiz was not entitled to a *Franks* hearing because he failed to "make a substantial preliminary showing that the affidavit contain[ed] intentionally or recklessly false statements, and . . . [that] the affidavit purged of its falsities would not be sufficient to support a finding of probable cause." *United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir. 1995) (internal quotations omitted). The district court did not abuse its discretion in finding necessity. *See United States v. Spagnuolo*, 549 F.2d 705, 710 (9th Cir. 1977); *United States v. Bennett*, 219 F.3d 1117, 1122 (9th Cir. 2000) (quoting *United States v. Torres*, 908 F.2d 1417, 1422 (9th Cir. 1990)). Finally, the district court did not abuse its discretion in denying R. Yepiz's request for *ex parte in camera* review because R. Yepiz failed to overcome the presumption of validity and there was sufficient evidence to establish probable cause even absent evidence gathered from the confidential informant. *See Roviaro v. United States*, 353 U.S. 53, 61 (1957); *United States v. Kiser*, 716 F.2d 1268, 1273 (9th Cir. 1983).

## XII. CHALLENGES TO SUFFICIENCY OF EVIDENCE

Various defendants challenge the sufficiency of the evidence supporting their convictions. In addressing their arguments, the court must construe the

evidence "'in the light most favorable to the prosecution,' and only then determine whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). Therefore, we reverse only when "all rational fact finders would have to conclude that the evidence of guilt" was insufficient. *Nevils*, 598 F.3d at 1165. This Court reviews the district court's denial of defendants' motions for acquittal de novo. *United States v. Carranza*, 289 F.3d 634, 641 (9th Cir. 2002).

The government introduced evidence that VBS exhibited hierarchy, role differentiation, a chain of command, membership dues, rules and regulations, internal disciplinary mechanisms, and an enterprise name. This is sufficient to show that VBS is an association-in-fact enterprise. 18 U.S.C.§ 1961(4); *see Boyle v. United States*, 556 U.S. 938, 948 (2009); *United States v. Fernandez*, 388 F.3d 1199, 1224 (9th Cir. 2004).

The government introduced sufficient evidence to show that the nineteen charged racketeering acts were sufficiently related to constitute "a pattern of racketeering activity." 18 U.S.C. § 1961(5); *H.J. Inc. v. N.W. Bell Tel. Co.*, 492

U.S. 229, 239 (1989); *Sun Savs. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 194 (9th Cir. 1987).

### i. *Carrasco*

Carrasco challenges the sufficiency of the evidence supporting his substantive RICO conviction (Count 1), and his convictions for RICO and drug conspiracy (Counts 2 and 3, respectively). The government introduced evidence showing that Carrasco was a bona fide member of VBS, had VBS-related tattoos inscribed across his stomach and behind his ears, and owned a car sporting a VBS-related license plate. Carrasco was also actively involved in drug-dealing with other VBS members, and engaged in gang-banging activities with them. Most notably, he and other gang members helped a wounded VBS member—David Garcia—escape apprehension after a shootout during which he murdered a police officer. Taken together, these facts support the conclusion that Carrasco played at least "some part in directing" VBS affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). This evidence is also sufficient to show continuous and sustained involvement in a range of VBS-related activities from which a reasonable jury could draw the conclusion that Carrasco's understanding with fellow VBS members "was of sufficient scope to warrant the conclusion that he embraced the

18

common purpose of the conspiracy." *United States v. Bibbero*, 749 F.2d 581, 587 (9th Cir. 1984).

Finally, Carrasco challenges the sufficiency of his conviction for accessory after the fact (Count 63). Carrasco challenges only the third element of the offense: that he assisted Garcia in "avoiding apprehension, trial or punishment." *United States v. Felix-Gutierrez*, 940 F.2d 1200, 1206 (9th Cir. 1991); *see also* 18 U.S.C. § 3. Carrasco's argument can be reduced to the contention that he was merely along for the ride, and did not actively intend to assist Garcia. However, this argument fails to meet the high bar of showing that no reasonable jury could have inferred from the evidence that he was an active participant in helping Garcia abscond.

### ii. *S. Mejia*

S. Mejia challenges his drug conspiracy convictions (Count 3). The government introduced evidence that S. Mejia communicated to Joe Rangel that he was going to start converting cocaine to cocaine base in the same manner as his brother, J. Mejia, and asked Rangel for cocaine to convert. Pay-owe sheets showed that Rangel and S. Mejia trafficked large quantities of cocaine. The government showed that on November 5, 2004, Rangel gave S. Mejia half a kilogram of cocaine. The government also introduced evidence that other VBS members were

19

aware of S. Mejia's drug trafficking activities. This evidence is sufficient to support S. Mejia's drug conspiracy convictions. *United States v. Mesa-Farias*, 53 F.3d 258, 260 (9th Cir. 1995).

S. Mejia also challenges the jury's quantity findings. A defendant may be held liable for the drugs he personally possessed, in addition to "the quantity of drugs that either (1) fell within the scope of the defendant's agreement with his coconspirators or (2) was reasonably foreseeable to the defendant." *United States v. Banuelos*, 322 F.3d 700, 704 (9th Cir. 2003). Therefore sufficient evidence supported these findings.

### iii. *Mendez*

Mendez argues that there is insufficient evidence to support his substantive RICO conviction (Count 1) because he was not a member of VBS, and never agreed to participate nor played any part in the criminal enterprise. As an initial matter, Mendez's status as a non-member is of no moment. "Associated outsiders who participate in a racketeering enterprise's affairs fall within RICO's strictures." *United States v. Tille*, 729 F.2d 615, 620 (9th Cir. 1984). Moreover, accepting Mendez's argument requires drawing many inferences from the evidence in his favor, which is manifestly improper under *Nevils*, 598 F.3d 1158 (9th Cir. 2010) (en banc).

### iv. R. Yepiz

R. Yepiz also challenges the jury's quantity findings. However, the evidence showed that R. Yepiz entered into many multi-pound methamphetamine and cocaine deals with various members of the conspiracy. Evidence also supported the jury's five kilogram of cocaine finding.

### XIII. CHALLENGES TO SENTENCES

Various defendants also challenge their sentences. When reviewing sentences, the appellate court should consider whether (1) the district court committed a procedural error, and (2) the sentence was substantively reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007).

Procedural error occurs where the district court incorrectly calculates the Guidelines range, treats the Guidelines as mandatory, fails to consider the 18 U.S.C. § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence. *Id.* Procedural error is not a ground for re-sentencing where the error was harmless. *United States v. Ali*, 620 F.3d 1062, 1074 (9th Cir. 2010). While sentencing decisions are generally reviewed for abuse of discretion, where a defendant failed to object on the grounds of procedural error below, this court reviews for plain error. *United States v. Valencia-Barragan*, 608 F.3d 1103, 1108 (9th Cir. 2010).

21

Where the district court's decision is procedurally sound, this court reviews the substantive reasonableness of the decision for abuse of discretion in light of the totality of the circumstances. *Gall*, 522 U.S. at 51. If the petitioner's sentence falls within the Guidelines range, the appellate court "may, but is not required to, apply a presumption of reasonableness." *Id.* However, where the sentencing decision is outside the Guidelines range, the court may not apply a presumption of unreasonableness. *Id.* We must also give "due deference" to the district court's decision that the § 3553(a) factors justify a variance from the Guidelines. *Id.* Thus, an abuse of discretion occurs only where the district court has applied the Guidelines in a way that is "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009).

### i. <u>Carrasco</u>

Carrasco challenges his sentence on several grounds. First, he argues that §§ 11350(a) and 11351 of the California Health and Safety Code are not divisible following *Descamps v. United States*, 133 S. Ct 2276, 2285–86 (2013). We find that because § 11351 criminalizes the possession for sale of "any" of a number of controlled substances that the statute identifies by reference, the statute "effectively

22

create[s] several different . . . crimes" that can be considered in the alternative. *Coronado v. Holder*, 759 F.3d 977, 984 (9th Cir. 2014) (internal quotation marks omitted). It is therefore divisible and subject to the modified **categorical approach. Because "the government only need[ed] to prove one of** the prior convictions to get the enhanced penalty in this case," Carrasco's § 11351 conviction alone was sufficient to support his sentence, and we need not consider whether §§ 11350(a) is also divisible.

Second, Carrasco argues that the district court committed procedural error by improperly calculating his Guidelines range. Because Carrasco failed to offer any support for this allegation and made no attempt to prove that his argument satisfies the elements of plain error, it fails.

Third, Carrasco argues that his offense level for Count 63 should have been 20 rather than 30 because his conduct was "limited to harboring a fugitive." Where a defendant's actions are limited in such a way, the Guidelines restrict the court from imposing an offense level higher than 20. *See* U.S.S.G. § 2X3.1(a)(3)(A)(B) and (C). However, the district court found that Carrasco's actions exceeded merely harboring a fugitive when he (1) picked up and dropped of David Garcia after he murdered Officer Pavelka so that he could make his way to Mexico; (2) toasted Officer Pavelka's death; and (3) was tasked with

23

investigating police officers' actions at the crime scene that evening, which the court determined was "important" in ensuring Garcia escaped apprehension. The court therefore did not abuse its discretion in refusing to cap his offense level at 20.

Fourth, Carrasco argues that the district court erred by rejecting his request for a minor role reduction and "substantially overstat[ing] the seriousness of his past convictions." In order to qualify for a minor role reduction, Carrasco must have "demonstrate[d] . . . that he was a minimal or minor participant in the criminal activity," to the extent that he was "substantially less culpable" than his co-participants. *United States v. Rosas*, 615 F.3d 1058, 1067 (9th Cir. 2010); *United States v. Cantrell*, 433 F.3d 1269, 1283 (9th Cir. 2006).

Carrasco's presentence report, which was adopted by the court, found that while his role in VBS's drug trafficking was "limited to receiving and distributing drugs . . . Carrasco was an average participant in the conspiracy," who "played a mutually supportive role," and was therefore "seen as equal in culpability to the other drug trafficking defendants." The evidence supports such a view, since Carrasco was convicted of possession with the intent to distribute at least 500 grams of cocaine, less than 50 grams of methamphetamine, and less than 100 kilograms of marijuana. In addition, Criminal History departures under USSG § 4A1.3 are "entirely discretionary under the Guidelines," and not subject to

24

procedural challenge. *United States v. Ellis*, 641 F.3d 411, 421 (9th Cir. 2011). As such, this court may only review them to determine a "sentence's substantive reasonableness," which Carrasco also challenges. *Id.* We find that Carrasco's 180-month sentence followed by eight years of supervised release was not substantively unreasonable, however, because the court reasonably considered Carrasco's history and the § 3553(a) factors in reaching its decision. The court therefore did not err in denying Carrasco's minor role reduction request.

Finally, Carrasco challenges the terms of his supervised release conditions as being impermissibly vague under 18 U.S.C. § 3583. The conditions stipulate that Carrasco may not "associate with" any member of a "criminal street gang," or "disruptive group" and may not wear, display, use, or possess any item that "connotes affiliation" with or membership in VBS. Precedent forecloses three of Carrasco's arguments, as this court has previously held that the terms "associate with," "criminal street gang," and "may connote" are not unconstitutionally vague. *See e.g. United States v. Soltero*, 510 F.3d 858 (9th Cir. 2007). However, as the government concedes, this court has previously found the term "disruptive group" to be impermissibly vague. *See id.* at 867. We must thus **REMAND** to the district court so that it may excise the phrase from Condition 7 of Carrasco's supervised release conditions. *Id.*

## ii. *Contreras*

Contreras contends that his within-Guidelines 300-month sentence is substantively unreasonable. Because his sentence falls within the Guidelines range, we are entitled to apply a presumption of reasonableness. *Gall*, 522 U.S. at 51.

Contreras was convicted of Counts 1-3 of the indictment, based in part on several recorded phone conversations between Contreras and other VBS members with whom he repeatedly discussed exchanging large amounts of methamphetamine and cocaine. Contreras's assertion that the court "obviously doubled" his sentence "simply because of his claimed membership in VBS, though he clearly had no role in the organization and had nothing to do with the matters with which he was charged in the indictment," therefore ignores the evidence in the record, the jury's verdict, and the court's findings. His sentence is not illogical, implausible, or without support.

## iii. *J. Mejia*

J. Mejia contends that the Guidelines "in effect at the time of [his] sentencing were amended during the pendency of [his] appeal." In addition, he contends that due to an intervening change in California State Law 47, J. Mejia's prior narcotics conviction has been reduced from a felony to a misdemeanor. The government concedes that the amendments make J. Mejia "potentially eligible for a

26

sentence reduction." Its sole objection on appeal is that the correct way to request a sentence adjustment is to "file a motion in the district court, in the first instance, under 18 U.S.C. § 3582(c)(2)," so that the government would be "free to re-advance its original position that J. Mejia conspired to distribute 18 kilograms of cocaine."

While J. Mejia argues that such an action would "penalize" him by affirming a "now erroneous factual finding concerning his criminal history," this court has previously denied similar requests for resentencing without prejudice, so that defendants may move for an adjustment of their sentence in the district court. *See United States v. Ogo*, 298 F. App'x 664 (9th Cir. 2008). We therefore **DENY** J. Mejia's request without prejudice.

### iv. *S. Mejia*

S. Mejia challenges the district court's mandatory minimum life sentence on the basis that the government failed to prove drug quantities. However, the district court's sentence was required under 21 U.S.C. §§ 841 (2006), given the jury's cocaine base and methamphetamine findings and Sergio's prior felony drug offenses.

### v. *Mendez*

Mendez argues that his 210-month sentence is substantively unreasonable because the district court denied him a minor role reduction under U.S.S.G. § 3B1.2, and is unreasonably high. In order to qualify for a mitigating role reduction, a defendant must "demonstrate by a preponderance of the evidence that he was a minimal or minor participant in the criminal activity," and "substantially less culpable" than his co-participants. *United States v. Rosas*, 615 F.3d 1058, 1067 (9th Cir. 2010); *United States v. Cantrell*, 433 F.3d 1269, 1283 (9th Cir. 2006).

The jury found Mendez guilty of Counts 1-3, 35, 36, and Racketeering Acts 1, 40(a), and 40(b), which included the distribution of large quantities of cocaine and marijuana. Based on this evidence, it was not erroneous for the court to conclude that Mendez "helped play an important role" in VBS's drug trafficking activities."

Mendez's sentence was also not unreasonably high. Based on the drug quantities found by the jury, the district court appropriately applied an offense base level of 36. The resulting Guidelines range, given a Criminal History Category of III, was 235-293 months. The court considered the § 3553(a) factors, highlighting that Mendez was a successful musician whose prior convictions were minor and unrelated to drugs, and accordingly gave him a sentence below the Guidelines

range. *Id*. at 60-61. Mendez's sentence is not illogical, implausible, or without support.

### vi. *Meza*

Meza contends that his sentence violated his due process rights because the district court relied on the allegedly erroneous fact that Meza was a member of VBS. A defendant's due process rights are violated during sentencing where a court relies on "materially false or unreliable information." *United States v. Columbus*, 881 F.2d 785, 787 (9th Cir. 1989). To rebut his sentence, Meza needed to show that his classification as a VBS member was (1) false or unreliable, and (2) the basis for his sentence. *Id.* Meza can show neither.

First, ample evidence—including VBS graffiti in Meza's rental home and his extensive knowledge of VBS affairs—chronicled Meza's involvement in the VBS, making the conclusion that he is a VBS member neither false nor unreliable. Second, the district court clearly stated that while it was sure Meza was a gang member, it was "looking at Mr. Meza's drug trafficking activities as the primary force in the sentence" it chose to impose. Meza's gang membership was therefore not the basis for his sentence and his claim fails.

### vii. *M. Yepiz*

M. Yepiz challenges his within-Guidelines 240-month sentence as substantively unreasonable. However, we need not consider this argument because we reversed his conviction in our concurrently filed opinion.

### *viii. R. Yepiz*

R. Yepiz challenges his mandatory life sentence, arguing that his two prior convictions under California Health and Safety Code § 11351 do not qualify as "felony drug offenses" for purposes of 21 U.S.C. §§ 841 and 851. Because R. Yepiz failed to raise this argument below, we review for plain error.

As discussed above in § XIII.i, we find that § 11351 is divisible and subject to the modified categorical approach. The sentencing court therefore did not plainly err when it used the modified categorical approach to determine "which element [of § 11351] formed the predicate offense for [R. Yepiz's] conviction." *Coronado*, 759 F.3d at 985.

The sentencing court also did not plainly err in determining that documents submitted to the district court were sufficient to demonstrate that R. Yepiz's 1993 conviction was a "felony drug offense." The government submitted three documents, including (1) a certified felony complaint in **case BA066066** charging R. Yepiz in Count 7 with "possess[ion] for sale and purchase for sale a controlled substance, to wit, cocaine;" (2) certified minutes from **case BA066066** showing

30

that R. Yepiz withdrew a plea of "not guilty" and pled nolo contendere to "a violation of Section 11351 H&S in Count 07;" and (3) a certified Disposition of Arrest and Court action form in **case BA066066** that, although partly illegible, shows R. Yepiz was charged under Count 7 with a violation of § 11351 and sentenced to two years imprisonment. This circuit has previously held that documents similar to those provided here were sufficient to establish a predicate offense for purposes of the modified categorical approach. *See e.g. United States v. Strickland*, 601 F.3d 963, 970 (9th Cir. 2010) (en banc). The submitted documents were therefore sufficient to establish R. Yepiz's predicate offense under § 11351 as possession of a narcotic or controlled substance for sale, which falls squarely within the definition of "felony drug offense" under § 841. *See* 21 U.S.C. § 841.

### ix. *Zambrano*

Zambrano raises a procedural challenge to his sentence, arguing that the district court violated Federal Rule of Criminal Procedure 32(h) by failing to notify him of its intent to "depart" from the Guidelines range in imposing a 480-month sentence.

Rule 32(h) requires a district court to notify the parties before it may "depart from the applicable sentencing range on a ground not identified for departure either

in the presentence report or in a party's prehearing submission." Fed. R. Crim. P. 32(h). However, as noted by the Supreme Court in *Irizarry v. United States*, 553 U.S. 708 (2008), Rule 32(h) applies only to "departures," not "variances." *Id*. at 714. A "departure" refers to a "change from the final sentencing range computed by examining the provisions of the Guidelines themselves," while a "variance" refers to a sentence falling "above or below the properly calculated final sentencing range based on the application of statutory factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Moschella*, 727 F.3d 888, 893 (9th Cir. 2013).

Here, the district court determined Zambrano's Guidelines range to be 235 to 293 months. After lengthy consideration of the § 3553(a) factors, the court found that that range "fail[ed] to adequately capture . . . [Zambrano's] criminal conduct and history," and chose to impose a sentence of 480 months. Throughout the court's discussion, it did not state that it wished to "depart" from the Guidelines range, but instead that it wished to impose a higher sentence in light of the § 3553(a) factors. The court thus applied a variance rather than a departure and Rule 32(h) does not apply.

## XIV. CUMULATIVE ERROR

"In some cases, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors

may still prejudice a defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996). However, here, we have largely found that the district court did not err. Furthermore, the cumulative effect of the instances where we have found that error was either harmless or did not rise to the level of plain error do not require reversal because "it is more probable than not that, taken together, they did not materially affect the verdict." *United States v. Fernandez*, 388 F.3d 1199, 1257 (9th Cir. 2004).

We conclude that all other issues are without merit.

## XV. CONCLUSION

We **REMAND** to allow the district court to amend Carrasco's conditions of supervised release; we **DENY** J. Mejia's request for a sentencing reduction without prejudice to filing a motion in the district court; we **AFFIRM** as to all other issues addressed in this memorandum disposition.